**In re Reuben Talbot REINSTEIN, Debtor.**

**Bankruptcy No. 92–32606–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

March 18, 1994.

Robert N. Gilbert, James B. Baldinger, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, for Chicago Bd. of Options.

Reggie David Sanger, Fort Lauderdale, FL, for trustee.

Kenneth R. Hartman, Kozyak, Tropin, Throckmorton & Humphreys, P.A., Miami, FL, for Petco Options, Inc.

David A. Carter, Boca Raton, FL, for debtor.

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

The Debtor, Reuben Talbot Reinstein, ("Debtor") was engaged prepetition in the business of options trading on the Chicago Board Options Exchange ("CBOE"). The primary non-exempt asset of the Debtor's estate is his seat on the CBOE (the "Seat"). The issue before the Court is whether the proceeds of the sale of the Seat are subject to disposition in accordance with the rules of the CBOE.

The issue was framed by the Objection of Petco Options, Co., Inc. ("Petco") filed August 24, 1993 and the Objection of the Chapter 7 Trustee filed August 23, 1993 (collectively, "Objections") to the Claims Report filed by the CBOE on August 4, 1993. The Objections were argued on October 5, 1993. At the conclusion of the hearing, the Court announced its ruling overruling the Objections and approving the Claims Report. The Court's October 13, 1993 Order Approving Claims Report incorporated by reference the findings and conclusions announced in the record. This Memorandum Opinion incorporates and supersedes the earlier findings and conclusions.[1]

### FACTS

The Debtor filed his Chapter 7 petition on July 31, 1992. By Order entered December 30, 1992 ("Order"), the Court modified the automatic stay to permit the CBOE to continue with certain disciplinary action against the Debtor which had been commenced prepetition and to dispose of the Seat in accordance with CBOE Rules. The Order required the CBOE to promptly sell the Seat and retain the proceeds pending distribution. The Order further required the CBOE to determine the priority of payment of claims against the proceeds in accordance with CBOE Rules. The Seat was sold by the CBOE for $255,500. The CBOE filed its

1. Neither objecting party pursued an appeal. The Court chose to issue this supplemental written opinion because of the relatively few published opinions addressing the issue.

Claims Report (the "Claims Report") on August 4, 1993 detailing how the proceeds must be distributed in order to comply with CBOE Rules.

With respect to the pending disciplinary proceedings against the Debtor, the Order recognized that the Debtor had filed a settlement offer with the CBOE which called for payment of a $75,000 fine, censure, one-year bar from CBOE membership and a concurrent one-year bar from associating with any CBOE member. The Order lifted the stay to allow the CBOE to consider the settlement offer and, if the offer was rejected, to "assess any sanctions against the Debtor it deems appropriate." Order at 3. Following entry of the Order, the CBOE accepted the Debtor's settlement offer.

Pursuant to the Order and in accordance with CBOE Rule 3.15, the CBOE accepted claims filed against the proceeds of the Debtor's Seat for a twenty (20) day period following the sale of the Seat. The only claims filed were by Petco for a CBOE arbitration award it received against the Debtor, and by Joel R. Bronstein ("Bronstein") for reimbursement or contribution in the event that Bronstein paid the award to Petco. The CBOE held that the Bronstein claim did not qualify for priority status pursuant to CBOE Rule 3.15(c). The Petco claim, in the amount of $1,248,788.40, did qualify for such status but was subordinated to the CBOE's claims in accordance with CBOE Rules. Therefore, the Claims Report provided for the payment of CBOE claims first, in the amount of $75,-000 for the disciplinary settlement plus $625 for unpaid dues, with the remainder of the proceeds, $179,875, to be paid to Petco. Both Petco and the Chapter 7 Trustee have filed Objections to the Claims Report.

### DISCUSSION

 Both of the Objections are founded on the same premise: that the priority treatment provided in the Claims Report for the CBOE fine violates section 726 of the Bankruptcy Code. Petco argues that the CBOE

fine should be subordinated pursuant to § 726(a)(4),[2] but that the provisions of the Claims Report should govern the distribution of the funds with respect to Petco's claim. Application of Petco's argument would result in Petco receiving virtually all of the proceeds from the sale of the Seat. The Trustee's Objection takes Petco's argument one step further and asserts that the CBOE's claim is a lien on the proceeds of the sale of the Seat, and because the CBOE claim is a fine pursuant to § 726(a)(4), the Trustee may avoid the lien pursuant to § 724(a)[3] for the benefit of the estate. The Court disagrees with both arguments and holds that the proceeds from the sale of the Seat should be distributed in accordance with the CBOE Rules.

The Debtor's seat on the CBOE exists because of the CBOE Rules and it can only be sold and its proceeds disbursed in accordance with those rules. CBOE Rule 3.15 governs sales of exchange seats and payments of claims from the proceeds. CBOE Rule 3.15(a) provides that all sums due the CBOE from the member whose seat is sold, as determined by the CBOE, including fines and unpaid dues, are entitled to a first priority. Claims of other members of the CBOE, such as the claim by Petco, are entitled to a lower level of priority pursuant to CBOE Rule 3.15(c)(1). If a claim is contingent or the amount that ultimately will be due thereon cannot be immediately ascertained or determined in accordance with Rule 3.15(d), CBOE, in its sole discretion may reserve and retain for later distribution such amount as it may deem appropriate. According to the Claims Report, the CBOE determined not to set aside any funds for Bronstein's claim.

When confronted with the application of similar rules of the San Francisco Stock Exchange Board as applied to the sale of a debtor's seat, the Supreme Court applied the exchange priority rules and held:

A seat in this Board is not a matter of absolute purchase. Though we have said

---

**2.** § 726(a)(4) subordinates to fourth priority, below unsecured claims, distributions "in payment of any allowed claim, whether secured or unsecured, for any fine, penalty or forfeiture …".

**3.** § 724(a) provides that "[t]he trustee may avoid a lien that secures a claim of a kind specified in § 726(a)(4) of this title."

306

it is property, it is incumbered with conditions when purchased, without which it could not be obtained. It never was free from the conditions of [the Board's priority rule], neither when [the debtor] bought, nor at any time before or since. That rule entered into and became an incident of the property when it was created, and remains a part of it into whose hands soever it may come. *Hyde v. Woods,* 94 U.S. (4 Otto) 523, 525, 24 L.Ed. 264, 265 (1876).

Fifty years after its decision in *Hyde v. Woods,* the Supreme Court reiterated that when a member of a stock, commodities, or futures exchange files a bankruptcy petition, "[b]y operation of the Bankrupt Law the membership passes, subject to rules of the exchange," to the debtor's estate. *Board of Trade of City of Chicago v. Johnson,* 264 U.S. 1, 12, 44 S.Ct. 232, 235, 68 L.Ed. 533 (1924). A more recent bankruptcy court decision held more specifically that "a membership is property of the estate and can be sold only if claims under [exchange rules] are first satisfied from the proceeds of the sale." *In re Drexel Burnham Lambert Group, Inc.,* 120 B.R. 724, 736 (Bankr.S.D.N.Y.1990). The rationale for these holdings was explained in a Seventh Circuit decision which, although not a bankruptcy decision, reviewed the bankruptcy precedents and stated, "the Supreme Court has consistently held that the seller of an exchange seat has only an interest in property *subject to* the exchange rules, including exchange priority rules.... The rules of the exchange *create* the property and they govern its attributes." *Chicago Mercantile Exch. v. United States,* 840 F.2d 1352, 1355–56 (7th Cir.1988) (emphasis in original). *See also* James J. Moylan, et al., *Exchange Memberships: An Overview of the Issues Pertaining to the Property Rights of a Bankrupt Member and His Creditors,* 9 J. of Futures Markets 461, 467 (1989).

▌ The Chapter 7 Trustee's objection is premised upon the notion that the CBOE's first priority claim constitutes a lien on the proceeds of the sale of the Debtor's seat. Although the Supreme Court's *Johnson* decision found the analogy of a lien useful to describe such claims, the Court made clear,

as did subsequent decisions, that claims against sale proceeds pursuant to exchange rules are not liens. Specifically, in *Johnson,* the Court noted that a claim to an exchange member's seat proceeds is "a right in some respects similar to the typical lien of the common law," but stated in the following sentence that the claim "differs" from a lien. *Johnson,* 264 U.S. at 11, 44 S.Ct. at 234. The Court underscored this point at the end of the opinion, when it stated: "The lien, if it can be called such, is inherent in the property in its creation." *Johnson,* 264 U.S. at 15, 44 S.Ct. at 236.

The Seventh Circuit, citing *Johnson,* addressed and rejected the lien argument: "[The exchange] rule was an incident of the seat when [the debtor] bought the membership; it preexisted his interest and will survive so long as the seat exists. It is an incident of the property, not a lien on that property." *Chicago Mercantile Exch.,* 840 F.2d at 1357. Claims pursuant to CBOE Rules, therefore, are not liens but inalienable parts of the membership itself. In short, the claim of the CBOE is not a lien subject to avoidance by the Trustee under § 724(a).

### CONCLUSION

Proceeds from the sale of Chapter 7 estate assets must normally be distributed in accordance with the priorities in § 726 of the Bankruptcy Code. Where the property consists of a seat on a securities exchange, the rules of the exchange control. The property comes into the estate subject to the exchange rules and therefore, the proceeds from a sale of the seat must be governed by the same rules. As applied in this case, the proceeds from the sale of the Debtor's seat on the CBOE must be distributed as provided in the CBOE Claims Report. The Objections are overruled.

DONE and ORDERED.