**In re Felipe MONZON, a/k/a, Phil Monzon, Debtor.**

**Bankruptcy No. 96–15020–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

Oct. 21, 1997.

Frank P. Terzo, Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL, for trustee.

Timothy S. Kingcade, Coral Gables, FL, for debtor.

## MEMORANDUM OPINION AND ORDER GRANTING, IN PART, TRUSTEE'S RENEWED OBJECTIONS TO EXEMPTIONS

ROBERT A. MARK, Bankruptcy Judge.

In this Opinion, the Court addresses the following much debated and unresolved issues relating to the treatment in bankruptcy of property held by a debtor and his non-debtor spouse as tenants by the entirety:

1. What type of joint debt must exist to bring entireties property into the estate?

2. How much of the entireties property comes in?

3. Does entireties property get liquidated solely to pay joint creditors or do all creditors share?

Although the amount at issue in this case is small, the Debtor and Trustee have fully briefed and argued these issues which, because of their importance, justify a published, comprehensive opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 1996 (the "Filing Date"), Felipe Monzon (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Joel L. Tabas was appointed trustee (the "Trustee"). The Debtor's schedules reflect unsecured debt in excess of $130,000 and no individual assets in excess of exemptions.

On the Filing Date; the Debtor and his wife, Melba, jointly owned a single family residence which they rented to a third party. The Debtor listed the property (the "TBE Property") as exempt on Schedule C of his bankruptcy schedules describing it as owned by the Debtor and his wife as tenants by the entireties. The Trustee stipulates that the TBE Property is owned as tenants by the entireties.

The Trustee initially objected to the claimed exemption based on the joint purchase money mortgage (the "Mortgage") on the TBE Property. After a hearing on January 28, 1997, the Court entered its Order Overruling Trustee's Objections to Debtor's Claimed Exemptions in Property Owned as Tenants by the Entirety (the "Initial Objection Order"). The Court held that entireties property does not get administered in a bankruptcy case if the *only* joint debt is the fully secured mortgage on the property.[1] The Order gave the Trustee leave to file a renewed objection if he discovered any additional joint obligations.

---

1. A more detailed analysis of how to treat oversecured joint debt is contained in Section III(A)   below.

On April 15, 1997, the Trustee filed his Renewed Objections to Claimed Exemptions ("Renewed Objections") alleging that a joint unsecured debt existed on a Burdines department store charge account. The Debtor has stipulated that on the Filing Date, Burdines held a joint unsecured claim in the amount of $378. Neither the Mortgage nor the Burdines debt were in default at the time of the filing.

The Court conducted a hearing on the Renewed Objections on July 14, 1997. For the reasons that follow, the Renewed Objections are sustained in part. The Trustee is entitled to administer $378 worth of entireties property, but the proceeds must be distributed solely to Burdines, the only joint unsecured creditor.

## DISCUSSION

### I. SUMMARY OF ARGUMENTS AND ISSUES PRESENTED

The Trustee argues that since the Debtor and his wife incurred a joint prepetition credit card debt, he is entitled to sell the TBE Property pursuant to 11 U.S.C. § 363(h)[2] and to retain an amount equal to the joint credit card debt in the estate for distribution pro rata to all creditors of the Debtor. The Debtor argues that the Trustee cannot administer the TBE Property because neither the Mortgage holder nor Burdines obtained an in personam judgment against the Monzons before the Filing Date. The Debtor argues alternatively that if the TBE Property is not exempt to the extent of the Burdines debt, the non-exempt funds should only be administered for the benefit of Burdines and not for individual creditors.

Thus, the Renewed Objections raise the following issues: (1) Must a creditor with a joint debt have a judgment before entireties property loses its exempt status?; (2) Assuming the requisite joint debt exists to trigger administration, is the exemption lost for all of the entireties property or only for that portion necessary to satisfy the joint debts?; and (3) If any entireties property is liquidated by the Trustee, should the proceeds be

distributed only to joint creditors or must they be distributed pro rata to joint creditors and creditors holding claims only against the individual debtor?

### II. RELEVANT BANKRUPTCY CODE SECTIONS AND APPLICABLE STATE LAW

Under § 541(a)(1) of the Bankruptcy Code a debtor's bankruptcy estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." Section 541 has been widely interpreted to include a debtor's interest in entireties property. *See e.g. Chippenham Hospital, Inc. v. Bondurant (In re Bondurant)*, 716 F.2d 1057, 1058 (4th Cir.1983) ("Section 541 has been construed logically to include the debtor's interest in entireties property."); *Napotnik v. Equibank and Parkvale Savings Association*, 679 F.2d 316, 318 (3d Cir.1982) (stating that § 541 is "certainly broad enough to include an individual debtor's interest in property held as a tenant by the entirety")

Section 522(b) of the Code allows the debtor to exempt certain property that would otherwise be subject to administration by a trustee. At issue here is the scope and interpretation of § 522(b)(2)(B), which allows the debtor to exempt entireties property under certain conditions. That subsection states, in pertinent part, as follows:

> Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant *to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.*

(Emphasis added).

Under Florida law, entireties property is exempt from process to satisfy debts owed to individual creditors of either spouse. *Neu v. Andrews*, 528 So.2d 1278, 1279 (Fla.

---

**2.** Under § 363(h), "the trustee may sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety ..."

4th DCA 1988). Entireties property is *not* exempt from process to satisfy joint debts of both spouses. *See Stanley v. Powers,* 123 Fla. 359, 166 So. 843, 846 (1936) (holding that a judgment debt against both spouses can be satisfied by selling entireties property).

Courts have generally recognized that § 522(b)(2)(B), read in conjunction with applicable Florida law, precludes the debtor from exempting a portion of his entireties property where joint creditors of both spouses exist at the time of filing. *See e.g. Pepenella v. Life Ins. Co. of Georgia (In re Pepenella),* 103 B.R. 299, 301 (M.D.Fla.1988) (explaining that under Florida law, entireties property is exempt from process of single creditors of one tenant, but joint creditor of both tenants may attach the entireties property); *In re Planas,* 199 B.R. 211, 217 (Bankr.S.D.Fla.1996) ("Where there are joint creditors of both spouses who under Florida law could have levied on properties held by the Debtor and non-debtor spouse as tenants by the entireties, the trustee is entitled to liquidate the debtor's interest in the properties."); *In re Cochrane,* 178 B.R. 1011, 1020 (Bankr.D.Minn.1995) (holding, in accordance with Florida law, that "[t]he nature of [tenancy by the entirety] does not shield the [entireties] asset against the claims of creditors to whom both spouses are jointly liable").

Thus, without serious question, an individual bankruptcy may require administration of some property held by the entireties if joint creditors exist. The dispute in the case law involves: a) the type of debt that precludes a debtor from claiming entireties property as exempt; b) the extent of the exemption once the requisite debt exists; and c) which creditors receive the non-exempt entireties property administered by a trustee.

## III. WHAT TYPES OF JOINT DEBTS TRIGGER ADMINISTRATION BY A TRUSTEE?

### A. A Trustee Should not Administer TBE Property if the Only Joint Creditor is Fully Secured by the Property

Prior to the Trustee's discovery of the Burdines joint debt, the Debtor and the Trustee had stipulated that only one joint debt existed, a current purchase money mortgage on the TBE property. Where only one oversecured joint debt exists there is no basis or at least, no reason, for the Trustee to administer entireties property.

If the entireties property has a value greater than the joint secured debt on that property *and* unsecured joint creditors exist, the value in excess of the joint secured debt is exempt from process under Florida law. Therefore, that surplus equity would also be exempt in bankruptcy under § 522(b)(2)(B). Since the surplus equity in entireties property is exempt from the trustee's reach, the only property subject to administration would be that portion of the property equal to the amount of the joint secured debt. Under § 522(b)(2)(B), the Trustee could argue that this portion of the TBE property is not exempt but, as a practical matter, it makes no sense for the property to be administered.

What would happen if the trustee successfully objected to the exemption based on a single secured debt? In theory, the trustee could sell the TBE property and satisfy the joint secured debt, but any excess funds (again, assuming no other unsecured joint debt) would be exempt and returned to the debtor and his or her spouse. This sale would provide no benefit to the estate and may, in fact, be unnecessary and unwanted by the creditor who may have no interest in forcing a sale of the TBE property and early payment of the secured debt. That would be particularly true in a case like this one where the oversecured joint debt is not in default.

Recapping the statutory analysis, the value of the TBE property up to the amount of the joint secured debt is *not* "exempt from process under [Florida law]" and is therefore *not* exempt under § 522(b)(2)(B). But, under § 554(a) of the Code, the property would have no value to the estate and therefore would, and indeed should, be abandoned by the Trustee. There is no more reason for a Trustee to administer TBE property solely to satisfy a joint secured debt than there is for a Trustee to administer any non-exempt

property for the sole benefit of a secured creditor.

■ A Trustee should not expend estate funds to proceed through the statutory steps of objecting to the TBE exemption, obtaining an order sustaining the objection only to the extent of the secured joint claim, and then abandoning the property under § 554. Instead, this Court adopts the simple and sensible rule that a Trustee should not and may not seek to administer TBE property if the *only* joint debt is the secured debt against that property.[3]

In sum, it is unnecessary for the trustee to administer TBE property for the sole oversecured creditor because such a creditor is fully secured and protected outside of bankruptcy and any excess funds would be exempt under § 522(b)(2)(B).

## B. A Joint Debt Does Not Have to be Reduced to Judgment to Subject Entireties Property to Administration.

Now that the Trustee has discovered the existence of a joint unsecured debt, the first question is whether the joint debt must be reduced to judgment before it limits a debtor's exemption under § 522(b)(2)(B). The Debtor says yes, urging the Court to follow *In re Himmelstein,* 203 B.R. 1009 (Bankr. M.D.Fla.1996). That case specifically held that "an actual in personam judgment is a prerequisite for a trustee's power [to administer entireties property]" 203 B.R. at 1013. *See also In the Matter of Anderson,* 132 B.R. 657, 661 (Bankr.M.D.Fla.1991) (holding that a trustee or creditor objecting to entireties exemptions must show that there is a joint judgment creditor at the time of filing before the exemption will be overruled).

■ ] The Court disagrees with the holding and reasoning in *Himmelstein* and adopts the majority view that a joint creditor need not hold an actual judgment as a prerequisite to administration by a trustee. That view

was articulated well in *Sumy v. Schlossberg,* 777 F.2d 921, 928 n. 14 (4th Cir.1985):

> [T]he absence of a judgment or lien has no bearing on the hypothetical issue of whether the debtor's interest would be exempt from process under state law, so the [entireties] property cannot be exempted and remains part of the estate to the extent of joint claims regardless of the joint creditors' actual possession of a judgment or lien under state law.

*See also Chippenham Hospital, Inc. v. Bondurant,* 716 F.2d 1057, 1058–1059 (4th Cir. 1983) (the absence of a joint judgment creditor in a position to oust the debtor from his/her entireties property is not controlling in evaluating the debtor's claim of exemptions); *In re Planas,* 199 B.R. at 217 (stating that "it is not necessary that the joint creditor have a writ of execution or final judgment, or even a default on the debt" for a trustee to be able to liquidate entireties property); *In re Boyd,* 121 B.R. 622, 624 (Bankr. N.D.Fla.1989) (holding that a joint creditor that "could have" levied on entireties properties is sufficient to trigger administration).

The Court finds that the majority view comports with the plain language of § 522(b)(2)(B) and avoids undue prejudice to joint creditors. First, the plain language of § 522(b)(2)(B) allows joint creditors to reach entireties property in bankruptcy if, at some point, those creditors could have had process issued under nonbankruptcy law. Nothing in § 522(b)(2)(B) mandates that joint creditors have the ability to have process issued under Florida law at the time of the filing.

Moreover, a debtor's property is not always exempt from process under Florida law before entry of a judgment. In appropriate circumstances, prejudgment remedies such as replevin, attachment, or garnishment are available, all of which would subject entireties property to "process under applicable" Florida law within the meaning of § 522(b)(2)(B).

---

3. The Court recognizes that a prudent trustee may choose to file an objection to the TBE exemption claim if there may be equity over the joint secured claim *and* joint unsecured creditors may exist. However, it makes no sense to prosecute such an objection if no other joint creditors exist since the equity would be exempt and abandonment of the property would be the inescapable result.

Finally, requiring a prepetition judgment would prejudice joint creditors since the entireties property would not be administered for their benefit in the bankruptcy case, *and* the debtor's discharge would prevent the joint creditor from ever obtaining a joint judgment enforceable against the entireties property.

In *Himmelstein*, the Court acknowledges this problem, but argues that the Code provides other protections to diligent joint creditors. 203 B.R. at 1013. For example, a joint creditor may seek relief from the automatic stay to obtain a judgment in state court and pursue relief against the entireties property. 203 B.R. at 1014. *Himmelstein* asserts that even if a debtor is discharged before the creditor obtains relief from the stay, the court can modify the discharge injunction to permit the creditor to procure a judgment against the entireties property. *Id.* (*citing In re Snow*, 38 B.R. 19, 21 (Bankr.M.D.Fla. 1983)). ("Whatever rights the joint creditors had against [entireties property] survive the discharge in bankruptcy.").

These "other protections" for joint creditors without a judgment on the filing date are tenuous, at best. The Court questions whether a judgment obtained after discharge would still be enforceable against entireties property. Other courts have expressed the same concern. In *Sumy v. Schlossberg*, 777 F.2d 921, 930 n. 20 the Fourth Circuit addressed the analysis in *Snow* relied upon in *Himmelstein* as follows:

> We question whether a creditor without a pre-bankruptcy judgment against the debtor could obtain a lien on the property in state court without first obtaining a personal judgment against the debtor (and his spouse), so even this strained construction of § 524 may not be enough to provide a

joint creditor with relief after a discharge is granted.[4]

The Sixth Circuit has also held that "there can be no post-discharge efforts to reach exempted property." *Munoz v. Dembs*, 757 F.2d 777, 781 (6th Cir.1985).

Thus, the Court disagrees with *Himmelstein* and finds that the Burdines joint debt, even though not reduced to judgment prepetition, precludes the Debtor from claiming the entire TBE Property as exempt.

## IV. TO WHAT EXTENT CAN THE TRUSTEE ADMINISTER THE TBE PROPERTY

Once the requisite joint debt exists, a court must determine the extent to which the debtor loses his/her entireties exemption. The Trustee stipulated in his Supplemental Memorandum that his administration is limited to the extent of the joint unsecured Burdines debt. A brief discussion of the issue is still appropriate given some contrary decisions on the issue.

■ Whether a debtor with joint debts loses the entireties exemption in full or only to the extent of the joint debts is answered by the plain language of § 522(b)(2)(B). As discussed above, that section gives the debtor the right to exempt entireties property that would otherwise be exempt from process under Florida law. Since any amount of entireties property in excess of that necessary to satisfy joint debts would be exempt from process under Florida law, that excess is also exempt from the reach of a trustee under § 522(b)(2)(B). *See e.g. In re Boyd*, 121 B.R. at 625 ("The Debtor's equity in the entireties property above the amount of the joint obligations qualifies for the § 522(b)(2)(B) exemption"); *In re Geoghegan*, 101 B.R. 329,

4. In *Sumy*, the Fourth Circuit undertook an exhaustive analysis of the prejudice that would result if entireties property was deemed exempt under § 522(b)(2)(B), with respect to joint creditors that do not hold a prejudgment lien. 777 F.2d at 929–932. The court discussed the following legal and practical problems with such a result even if bankruptcy courts provided other remedies under the Code: 1) the debtor would be able to avoid any post-petition lien obtained by the joint creditor since § 522(f) provides for avoidance of all liens on exempt property; 2)

even if stay relief was granted in favor of joint creditors to pursue judgment, these creditors would inevitably race to the courthouse burdening the debtor with duplicative costs and leading to a scenario where slower joint creditors are left without collecting their fair pro rata share; and 3) if discharge were to be withheld during the pendency of the joint creditors' foreclosure action, the debtor's "fresh start" would be hindered and distribution to other creditors would be postponed.

331 (Bankr.M.D.Fla.1989)(limiting a trustee's administration "to the extent of claims held by joint creditors of both the Debtor and his non-filing spouse"). *But see In re Planas,* 199 B.R. at 219 (holding that the trustee could administer entireties property even though its value exceeded the total amount of joint debt).

Thus, the Court finds that while the Trustee may administer the TBE Property to the extent of the Burdines debts, any excess proceeds from the liquidation of the TBE Property remain exempt.[5]

## V. ONCE THE TBE PROPERTY IS LIQUIDATED, ARE THE PROCEEDS AVAILABLE ONLY TO JOINT CREDITORS OR ARE THEY SHARED, PRO RATA, WITH INDIVIDUAL CREDITORS OF THE DEBTOR?

Much of the recent debate over the effect of bankruptcy on entireties property has focused on the issue of whether a trustee must distribute proceeds from entireties property for the benefit of the general estate pursuant to § 726 of the Code or whether the proceeds should be used solely to pay joint creditors. In *In re Planas,* Chief Judge Cristol appropriately described the split as arising from the following "enigma":

> [I]f an individual creditor is allowed to benefit from the entireties property now within the estate, that creditor is in a better position with respect to the debtor than he would be provided under state substantive law. Likewise, if an individual creditor is not allowed this extra benefit, this would violate an aim of the Bankruptcy Code—to equalize distribution among creditors.

199 B.R. at 216 (*citing* Paul C. Wilson, *"Fresh Start" or "Head Start": Missouri Courts Rethink the Role of Tenancies by the Entirety in Bankruptcy,* 56 Mo.L.Rev. 817 (1991)).

The Trustee cites to *Planas* and *In re Boyd,* to support his argument that he must administer the TBE Property for the benefit of joint *and* individual creditors of the estate. In *Planas,* the debtor listed five items of property as exempt based upon ownership by the entireties. The debtor and his spouse were jointly obligated on two debts, a mortgage on a warehouse property and a mortgage on the debtor's homestead.

The trustee objected to the debtor's exemptions asserting that some of the properties claimed as exempt were not held as entireties property under Florida law. In the alternative, the trustee argued that, even assuming the viability of the tenancy, he was entitled to liquidate all of the entireties property for the benefit of both joint and individual creditors since the debtor and his spouse were jointly liable on the warehouse mortgage.

Chief Judge Cristol concluded that the trustee: a) could administer the debtor's share in all of the entireties properties, irrespective of the amount of joint debts[6]; and b) must administer the entireties properties for the benefit of the general estate, not merely for the benefit of joint creditors. 199 B.R. at 215–219. In reaching the latter conclusion, Chief Judge Cristol relied upon *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931) and the distribution scheme in § 726 of the Code. This portion of *Planas* was not unique. These same arguments have led other bankruptcy courts to conclude that non-exempt entireties property must be distributed to individual creditors.[7] *In re*

---

5. Some debate exists about whether the trustee may administer TBE Property equal to one half of the joint debt or the entire joint debt. On this issue, the Court fully agrees with the analysis in *Himmelstein.* Judge Funk reasoned that the tenant's interest in entireties property comprises an inseverable interest in the whole. Therefore, he concluded that all of the equity in entireties property up to the amount of the joint debts comes into the estate. 203 B.R. at 1016.

6. The Court has already addressed its disagreement with this portion of the *Planas* decision, supra at Part IV.

7. The court in *In re Anderson,* 132 B.R. 657 (Bankr.M.D.Fla.1991), took a slightly different approach to reach the same conclusion. The court held that a § 363(h) sale extinguishes or severs the tenancy by the entirety and creates a tenancy in common. *Id.* at 660. Since non-exempt property held as tenants in common is not immune from the reach of individual credi-

*Amici,* 99 B.R. 100 (Bankr.M.D.Fla.1989); *In re Boyd,* 121 B.R. at 625. *See also, In re Cochrane,* 178 B.R. at 1022 (finding, under Florida law on entireties property, that "after the trustee liquidates a debtor's interest in entireties property by using 11 U.S.C. § 363(h), ... that value is part of the general bankruptcy estate and may be distributed to all creditors").

### A. Arguments For Pro Rata Distribution of Entireties Property to Joint *and* Individual Creditors

#### 1. *Moore v. Bay*

In *Moore,* the case presented to the Supreme Court involved the administration of cars, parts and equipment that were subject to a chattel mortgage. The chattel mortgage was avoided under state fraudulent conveyance law pursuant to the trustee's powers under the former Bankruptcy Act's predecessor to § 544(b) of the Code. Under the state fraudulent conveyance statute used by the trustee in *Moore,* creditors that arose after the mortgage's recordation were not entitled to avoid the mortgage.

One issue on appeal to the Supreme Court was whether the trustee must distribute the proceeds of the avoided mortgage pro rata to all creditors without regard to whether a creditor existed before or after the mortgage recordation. The Supreme Court held that once the mortgage was avoided, the trustee had to distribute the proceeds pro rata to all creditors of equal priority without regard to whether those creditors existed before or after the mortgage was recorded.

Courts have cited *Moore* as establishing a universal bankruptcy principle: Once a trustee recovers property for the estate, the property must be equally distributed to all credi-

tors. *See In re Planas,* 199 B.R. at 215–216; *See also In re Boyd,* 121 B.R. at 625 ("What the trustee recovers is to be distributed pro rata to all creditors under the bankruptcy distribution scheme."); *In re Amici,* 99 B.R. at 102. Thus, these courts argue that once entireties property loses its exempt status and is recovered for the benefit of the estate, it must be equally distributed by the trustee to all creditors of the same priority status, both joint creditors and individual creditors. *Id.*

#### 2. Violation of the § 726 Distribution Scheme

■ In general, a trustee must distribute recovered assets in accordance with the distribution scheme enumerated in § 726 of the Code. Under § 726, all creditors of equal rank share pro rata in any disbursement made by the trustee.

Some courts have argued that a distribution of entireties property solely to joint creditors creates a "sub-class" of creditors that receive a special priority. *See In re Amici,* 99 B.R. at 101. *See In re Planas,* 199 B.R. at 217 (adopting Judge Paskay's reasoning in *Amici* ). These courts assert that precluding an individual creditor of equal rank from sharing, pro rata, in the trustee's distribution of entireties property violates § 726. *In re Amici,* 99 B.R. at 102 (stating that "remaining unsecured creditors, who do not have a claim against both the Debtor and the non-debtor spouse would not receive a treatment equal to the joint creditors even though legally they are holding claims of equal rank"); *In re Boyd,* 121 B.R. at 624 (holding that creating a "sub-class" of joint creditors would be "totally contrary to and in

tors, the court reasoned that the trustee must distribute the proceeds from such property without regard to whether a creditor holds a joint or individual claim. *Id.* This Court disagrees. Section 363(h) is a procedural mechanism for a trustee to realize the value of non-exempt property for the estate. *In re Ginn,* 186 B.R. 898, 902 (Bankr.D.Md.1995). It does not "catapult a procedural vehicle ... into a substantive right that would give creditors of only one spouse a right against entireties property that did not exist outside of bankruptcy." *Id.* Further, allowing the trustee to unilaterally sever the tenancy by virtue

of a § 363(h) sale gives the trustee the power to perform an act that the debtor could not have accomplished outside of bankruptcy in Florida. *See Naurison v. Naurison,* 132 So.2d 623, 624 (Fla. 3d DCA 1961) ("There can be no severance of the estate [by the entireties] by the act of either [spouse] ..."). Since this overriding power is not explicitly given anywhere in the Code, it simply does not exist. Finally, this Court rejects the § 363(h) argument since the exemption issue should be analyzed based on the property interests as they existed on the filing of the bankruptcy petition.

violation of the scheme of distribution provided by § 726 of the Bankruptcy Code.")

### B. Neither *Moore v. Bay* Nor § 726 of the Bankruptcy Code Require that Entireties Property be Distributed to Individual Creditors

This Court acknowledges that both *Moore v. Bay* and the general distribution scheme in § 726 support distribution of non-exempt entireties property to all creditors. Nevertheless, the Court finds that since the Debtor's individual creditors could have never reached the TBE Property under state law, they cannot obtain a different and more favorable result in bankruptcy by sharing in the distribution of these assets. *See Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Several courts have adopted this view holding that the trustee may only distribute non-exempt entireties property to the joint creditors. *Sumy v. Schlossberg,* 777 F.2d at 932 (4th Cir.1985) (holding that under § 363(h) "the trustee may administer [entireties] property for the benefit of the joint creditors" of the estate). *Pepenella v. Life Ins. Co. of Ga. (In re Pepenella),* 103 B.R. at 302 (following the "majority rule" that "the equity in the property may be used to satisfy the joint creditors, but the remainder of the equity is exempt as to the sole creditors of one of the tenants."); *In re Himmelstein,* 203 B.R. at 1015 (finding that "the better reasoned approach allows for the joint creditors alone to seek distribution of the jointly held assets"); *In re Ginn,* 186 B.R. at 903; *In re Geoghegan,* 101 B.R. at 331 ("no other method [of distribution] appears viable . . ."); *In re Oberlies,* 94 B.R. 916, 923 ("The trustee may administer the joint assets only for the benefit of joint creditors.");*See also, Williams v. Peyton (In re Williams),* 104 F.3d 688 (4th Cir.1997) (finding that since the debtor never claimed entireties property as exempt on her schedules, the trustee is "free to administer the real estate for the benefit of [her] joint creditors").

### I. *Moore v. Bay* Does Not Compel Distribution of Property to Individual creditors

Though *Moore* has been held to establish a universal bankruptcy principle that the trustee must administer the estate for the benefit of all creditors, this principle does not apply to entireties property that loses its exempt status. *Moore* involved a state law that prohibited creditors arising after the recordation of a mortgage from upsetting that mortgage. The Supreme Court held that the trustee could not limit distribution of the proceeds of the avoided mortgage to those creditors existing before the recordation of the mortgage, but must administer the proceeds for the benefit of the estate.

Cases cited to in *Moore* rely on statutory language in section 70(e) of the former Bankruptcy Act which broadly provides that the trustee is vested with title to all property fraudulently transferred by the debtor. *In re Oberlies* 94 B.R. at 922. Congress amended section 70(e) following the *Moore* opinion to explicitly state that all avoidable transfers "shall pass to, and . . . be avoided by, the trustee for the benefit of the estate." Likewise, under section 550(b) of the Bankruptcy Code, "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred."

These are all examples of Congress creating new remedies which apply to a broader class of creditors by passing statutes establishing uniform bankruptcy laws. U.S. CONST. art. I, sec. 8. Therefore, the inconsistent state law in *Moore* had to yield to the statutory language of section 70(e) requiring the trustee to administer the proceeds of the avoided mortgage for the benefit of the estate as a whole. *Id.* There is no such language, however, in section 522(b)(2)(B) of the Bankruptcy Code requiring a trustee to administer proceeds from entireties property for the benefit of creditors not holding a joint claim. *Id.* Absent such a requirement, courts are powerless to effect an improvement in creditor's rights. Therefore, the state law granting preferential status to joint creditors with respect to entireties property is still controlling, and the entireties property is immune from the reach of individual creditors.

#### 2. The *Butner* Principle

Courts relying on *Moore v. Bay* to support distribution of entireties property to individu-

al creditors have overlooked or at least failed to give proper weight to another, more applicable principle also enunciated by the Supreme Court. In *Butner*, the Court held that bankruptcy law aspires to change rights only as much as is necessary in order to vindicate bankruptcy policy. As more specifically explained by the Supreme Court:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

440 U.S. at 55, 99 S.Ct. at 918.

The Supreme Court reasoned that "state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress." 440 U.S. at 54, n. 9, 99 S.Ct. at 918, n. 9. The Court applied this principle to a mortgagee's security interest, holding that "the federal bankruptcy court should take whatever steps necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." *Id.* at 56, 99 S.Ct. at 918.

Granting an individual creditor the opportunity to reap the assets of entireties property in bankruptcy diminishes the non-debtor spouse's interest in such property since the debtor spouse would not have been able to subject the entireties property to the reach of individual creditors under Florida law. Further, a pro rata distribution would conflict with state substantive law that permits only joint creditors to share in the distribution of entireties property. Thus, the issue under *Butner* becomes whether the Code, and more specifically § 726, embodies an overriding federal interest justifying this curtailment of state law property rights. The Court finds that the Code does not preclude the application of Florida law. In fact, § 522(b)(2)(B) mandates strict adherence to it.

It is true that § 726 does not provide a statutory basis for administration of two separate estates for joint and individual creditors. This omission does not mean that separate administration of the entireties property would conflict with federal bankruptcy policy. *In re Oberlies*, 94 B.R. at 920 ("The mere fact that the [federal] statutes do not specifically address the issue does not mean that the procedure [distribution solely to joint creditors] is improper ... The absence of specific enabling legislation to direct the trustee to administer separate estates is not such an overriding federal policy.")

This Court has previously determined that § 726 does not always override non-bankruptcy law holding that the trustee, under certain circumstances, must deviate from the § 726 distribution scheme to accommodate overriding nonbankruptcy property rights. *In re Reinstein*, 165 B.R. 303 (Bankr. S.D.Fla.1994). In *Reinstein*, the debtor's estate included the debtor's seat on the Chicago Board of Exchange ("CBOE"). During the bankruptcy, the Court directed the CBOE to sell the seat in accordance with its rules. The seat was then sold and a dispute arose over how to distribute the proceeds.

Under the CBOE Rules, the proceeds from the sale of a seat are distributed first to satisfy any fines that the previous owner of the seat owed to the CBOE. Thus, the CBOE filed a claims report directing that the proceeds from the sale be distributed in accordance with its Rules. The trustee and an unsecured creditor whose claim was subordinated under the CBOE Rules objected to the method of distribution in the claims report arguing that it violated § 726.

This Court held that distribution of the proceeds was governed by the CBOE Rules, despite the conflict with § 726. The Court reasoned that the seat came into the estate "subject to the CBOE's Rules and therefore, the proceeds from the sale of the seat must be governed by the same rules." *Id.* at 306, (*citing Board of Trade of City of Chicago v. Johnson*, 264 U.S. 1, 12, 44 S.Ct. 232, 235, 68 L.Ed. 533 (1924)).

Although the Court's decision in *Reinstein* was controlled by specific precedent with respect to the treatment of exchange seats in bankruptcy, the decision still stands for the broader proposition that certain property en-

ters the bankruptcy estate subject to rules of property ownership that existed outside of bankruptcy.[8] That principle applies here. Since entireties property is subject to the Florida rule that immunizes such property from the reach of individual creditors, the Trustee cannot administer the TBE Property in accordance with the distribution scheme in § 726. Instead, the property must be preserved for the sole benefit of joint creditors, the only creditors who could look to it in satisfaction of their debts outside of bankruptcy.

Finally, the plain language of § 522(b)(2)(B) directs courts to follow state substantive law with respect to entireties property. In Florida, the law with respect to entireties property undoubtedly protects the rights of joint creditors. Thus, a pro rata distribution of entireties property to all creditors would be inconsistent with § 522(b)(2)(B) since that provision was intended to incorporate Florida's protection of these parties. It would make no sense for Congress to enact § 522(b)(2)(B) which entitles joint creditors to reach entireties property in bankruptcy, yet substantially dilute that interest once that property is in the estate by requiring joint creditors to share the entireties property with individual creditors.

The facts in this case demonstrate the unfairness of such a result. The Debtor had $130,000 in individual debt on the Filing Date. Thus, if the TBE Property is sold and $378 of the proceeds are brought into the estate, a pro rata distribution to all creditors would leave Burdines, as a joint creditor, with about one dollar. Such a result not only conflicts with the intent to protect joint creditors interest in § 522(b)(2)(B), it is also grossly inequitable since the TBE Property would not have come into the estate had it not been for the existence of the Burdines debt. Although the amount is obviously negligible here, pro rata distribution to all creditors would, in some cases, provide a significant and unjustified windfall to individual creditors.

In *Butner*, the Supreme Court directed that bankruptcy courts "prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" 440 U.S. at 55, 99 S.Ct. at 918, (quoting *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)). If individual creditors are able to collect the proceeds of entireties property from a bankruptcy trustee, they would be receiving the very "windfall" that the Supreme Court warned against. Thus, the Court holds that entireties property which is non-exempt under § 522(b)(2)(B) may be distributed only to those creditors who had rights against the property under Florida law—the joint creditors of both spouses.

## CONCLUSION

The issues presented in this case are difficult because of the tension between state law property interests and general rules of distribution in bankruptcy cases. Moreover, there is no controlling authority to resolve genuine and material differences of opinion amongst the several courts which have considered these issues.

In sum, this Court finds that (1) a single oversecured joint debt will not trigger administration of TBE property. However, the presence of an unsecured or undersecured joint debt will subject entireties property to administration by a Trustee whether or not the creditor obtained a judgment prepetition; (2) a Trustee may administer only that amount of entireties property equal to the amount of the joint debts; and (3) non-exempt entireties property may only be distributed to joint creditors, not to individual creditors of the debtor.

Section 522(b)(2)(B) is designed to protect joint creditors from prejudice when only one spouse files for bankruptcy protection. The Court's conclusions in this case satisfy that

---

**8.** Another example is found in cases administering monies deemed to be held in trust for trust claimants under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a–499s. Although there is no statutory procedure for administering these assets separately, courts have held that a trustee may administer a PACA trust res solely for the benefit of the PACA claimant. *In re Oberlies*, 94 B.R. at 922; *In re United Fruit & Produce Co.*, 86 B.R. 14 (Bankr.D.Conn. 1988).

statutory purpose without providing a windfall to the individual creditors not available under Florida law and not justified by any identifiable bankruptcy policy.

Thus, the Monzons' $378 joint credit card debt triggers the Trustee's ability to administer the TBE property. The Trustee can only administer the TBE property to the extent of the $378 Burdines debt. Moreover, the TBE property can only be liquidated for the benefit of Burdines, not for the benefit of the Debtor's individual creditors.

Therefore, it is—

ORDERED as follows:

1. The Renewed Objections are granted in part. The TBE Property is not exempt under § 522(b)(2)(B) of the Bankruptcy Code to the extent of the joint secured debt and the $378.00 joint unsecured Burdines debt.

2. Unless the Debtor or his wife satisfies the Burdines debt from non-estate assets, the Trustee may liquidate the TBE Property and retain proceeds in the amount of $378 after satisfaction of the secured debt.

3. The $378.00 in proceeds must be distributed solely to Burdines, the only known joint unsecured creditor.

4. If the Burdines debt has been satisfied, the Trustee shall not administer the TBE Property.