**In re Juan E. PLANAS, Debtor.**

**Bankruptcy No. 94–15472–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

July 19, 1996.

Kathe Kozlowski, Miami, FL, for Debtor and spouse.

Alvin Goldstein, Miami, FL, for Trustee.

James Feltman, Trustee, Arthur Andersen L.L.P., Miami, FL.

## MEMORANDUM DECISION AND ORDER ON TRUSTEE'S RENEWED OBJECTION TO DEBTOR'S CLAIMED EXEMPTIONS

A. JAY CRISTOL, Chief Judge.

**THIS MATTER** came before the Court on June 22, 1995 and August 24, 1995, upon the Trustee's Renewed Objection to Debtor's Claimed Exemptions (the "Objection"), and the Non–Debtor Spouse's Motion for Affirmative Relief and Motion to Compel Turnover of Property (the "Motion for Affirmative Relief").

This case asks the question, "May a Debtor eat smorgasbord or must the Debtor coming to the bankruptcy table eat the entire meal?" The Debtor in this case has:

(1) incurred debt;

(2) structured his assets in tenancy by the entireties format; and

(3) sought to discharge all his debt and keep all of the assets.

The Debtor has a homestead which is not at issue, and some personal property which may be exempted by claiming his Article X, Section 4, Florida Constitutional exemption. At issue, however, is whether the Debtor may keep a commercial warehouse, valuable stock of two corporations, a Merrill Lynch account, and a Sun Bank account while his creditors' claims are discharged. To accomplish this, the Debtor relies on 11 U.S.C. § 522(b)(2)(B), which provides that if a property which would otherwise be property of the estate is immune from process under applicable state law, it is equally not subject to administration by the trustee in bankruptcy in a chapter 7 case. This proposition is based on the time-honored concept recognized by the laws of most states, originating in the Common Law, that a property owned by a husband and wife as tenants by the entireties cannot be reached and subjected to satisfy a claim of a creditor who has only a claim against one of the tenants in this type of ownership. This Court does not agree. Debtor may not pick the olive and the cherry, and then leave the spinach. When Debtor comes to dine at the Bankruptcy Court table, he must eat it all—all the federal law, and he may not pick the benefits and leave the burdens.

Upon consideration of the pleadings, the written closing statements and proposed memorandum decisions submitted by both parties, the arguments of counsel, the testimony of the witnesses, and applicable case law, the Court makes the following findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND

On December 30, 1994, Juan E. Planas ("Mr. Planas," the "Debtor") filed an individual Chapter 7 bankruptcy petition. The Debtor listed his residential homestead, household goods, bank account, brokerage account, equity interests in two corporations, and a warehouse as property of the Debtor. He then proceeded to list all these properties as exempt as tenancy by the entireties property with his non-debtor spouse, Sylvia N. Planas ("Mrs. Planas" or the "non-debtor spouse"). Mr. and Mrs. Planas have been married for 32 years and have adult children.

Specifically, the Debtor claims the following property as exempt based on his asser-

tion that he and his wife jointly hold the property as tenants by the entirety:

a. An account at Merrill Lynch, Pierce, Fenner & Smith, Inc. with a balance as of the petition date of approximately $67,000.00;

b. An account as SunBank/Miami with a balance as of the petition date of approximately $300.00;

c. Debtor's stock in two businesses, Eastern Contractors Corp. and Eastern Drywall Corp., with a claimed market value of $30,000.00;

d. All of Debtor's household goods and art objects with a claimed market value of $4,000.00; and

e. A warehouse at 7152 N.W. 50th Street, Miami, Florida with claimed equity of approximately $23,000.00.

Debtor's homestead is claimed exempt pursuant to Article X, Section 4, of the Florida Constitution and Chapter 222 of the Florida Statutes. The Trustee has not objected to Debtor's claimed homestead exemption.

On April 14, 1995, the Trustee, James S. Feltman, filed his Renewed Objections to Debtor's Claimed Exemptions. (CP # 27). The Trustee objected to all of Debtor's property claimed as exempt on the grounds that classification as entireties property is not a proper basis for an exemption and that the bank and brokerage accounts have not been held as entireties property because there are other names on some of the accounts. The Trustee also argued that he is entitled to liquidate *all* entireties property if the Debtor and his non-debtor spouse are jointly liable on *any* joint obligation (i.e., Debtor's homestead and/or the Warehouse), whether reduced to judgment or not, and whether secured or unsecured. In the alternative, the Trustee requested that the Court determine that both the Merrill Lynch Account and SunBank Account not constitute entireties property under Florida law. The Trustee further sought authorization to liquidate the accounts pursuant to § 363(h) of the Bankruptcy Code. On May 12, 1995, Mrs. Planas, the non-debtor spouse, filed her Motion for Affirmative Relief. In the motion, Mrs. Planas alleged that the Trustee improperly caused SunBank to turn over certain monies in a joint checking account consisting of pre- and post-petition wages. This resulted in the non-payment of insurance premiums automatically deducted from the joint checking account, causing embarrassment to the non-debtor spouse.

On June 22, 1995, a hearing was held on both the Trustee's objection to claimed exemptions and the non-debtor's Motion for Affirmative Relief. At the hearing, the Court requested that counsel submit memoranda of law clarifying the issues. On August 16, 1995, the Court reset the matter for an evidentiary hearing scheduled for August 24, 1995.

### STIPULATED FACTS

In June of 1980, Mr. and Mrs. Planas opened a cash management account, account number 51835, at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). The account was titled as a joint account. Special instructions on the account application stated that Celia R. Novo, Mrs. Planas's mother, was authorized to execute checks as agent and attorney in fact until further written notification. (Debtor's exhibit 1).

In January of 1988, Mr. and Mrs. Planas transferred that existing Merrill Lynch cash management account to a different branch of Merrill Lynch and a new account number, 738–53755, was assigned. This cash management account was also titled jointly with right of survivorship. (Debtor's exhibit 4). Sometime thereafter, the account number was changed to 738–96449. (Debtor's exhibit 9).

In March of 1994, check no. 366 was written from the Merrill Lynch cash management account (738–96449) in the amount of $10,000.00, and made payable to Eastern Contractors Corp., a Florida corporation owned by Mr. and Mrs. Planas.

In May of 1994, check no. 368 was written from the Merrill Lynch cash management account (738–96449) in the amount of $10,000.00, and made payable to Mr. and Mrs. Planas's daughter, Sylvia M. Planas. Mr. and Mrs. Planas have characterized this payment as a gift to their daughter.

In September of 1994, Mr. and Mrs. Planas received from Eastern Contractors Corp., as profits for 1993, the sum of $10,-205.00 (the "$10,205.00 Eastern Contractors Dividend"). The Eastern Contractors Dividend was deposited in Mrs. Planas's University of Miami Credit Union Account (account number 29909). Mr. Planas is not an account holder of the Credit Union Account.

In October of 1994, Mr. and Mrs. Planas opened another cash management account at Merrill Lynch (account number 754–84526). On the account application, Mr. and Mrs. Planas designated the account as "JTWROS: Joint Account with Right of Survivorship." The application provided the option of designating the account as "ATBE: As Tenants by Entirety (for married persons, only in states where applicable)." (Debtor's exhibit 7).

In November of 1994, all funds in the 1988 Merrill Lynch Account (account no. 738–96449) were transferred into the 1994 JTWROS cash management account (account no. 754–84526).

During the period between January 1, 1994 and December 30, 1994, the petition date, Mr. Planas, Mrs. Planas, their daughter, Sylvia M. Planas, and Mrs. Planas's mother, Celia R. Novo, were account holders of a SunBank/Miami, N.A. checking account (account no. 082–002015148) (the "SunBank Account").

Mr. and Mrs. Planas jointly own a warehouse at 7152 N.W. 50th Street, Miami, Florida (the "Warehouse"). The Warehouse is rented to Eastern Contractors Corp., for a monthly rent of $1,500.00.

During the months of October, November, and December of 1994, the monthly rent checks for the Warehouse were made payable solely to Mrs. Planas and were deposited by Mrs. Planas in her Credit Union Account. However, the expenses for the Warehouse were paid from the joint SunBank Account.

The Debtor claims that both the Merrill Lynch Account (account no. 754–84526) and the SunBank Account are exempt assets because his interests are held as tenancies by the entireties. The Trustee has objected to this claim.

### APPLICABLE LAW AND DISCUSSION

Upon the filing of a petition for relief, a bankruptcy estate is created. 11 U.S.C. § 301 and § 541. The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. A debtor, however, is allowed to exempt certain property from the bankruptcy estate. 11 U.S.C. § 522. A debtor may utilize the federal exemptions enumerated in § 522(d) of the Bankruptcy Code, or, in states that have opted out of the federal exemptions, a debtor may utilize the exemptions to which he is entitled under state law and non-bankruptcy federal law. *In the Matter of Anderson*, 132 B.R. 657 (Bankr.M.D.Fla.1991); 11 U.S.C. § 522(b). In Florida, a debtor may utilize Florida state law and non-bankruptcy federal law exemptions.[1]

Debtor wishes to utilize 11 U.S.C. § 522(b)(2)(B), providing:

any interest in property in which the debtor had, immediately before the commencement of the case, and interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

Under Florida law, an individual spouse may not alienate tenancy by the entirety properties without the consent of the other spouse. As a corollary to this proposition, it is clear that a creditor of only one spouse cannot look to that property to satisfy its claim. *In the Matter of Koehler*, 19 B.R. 308 (Bankr.M.D.Fla.1982). "Only joint creditors, i.e., those creditors with claims against both tenants, may reach the entireties property." *Id.* at 309; *Stanley v. Powers*, 123 Fla. 359, 166 So. 843 (1936); *In the Matter of Anderson*, 132 B.R. 657, 659 (Bankr.M.D.Fla.

---

1. Florida has opted out of the federal bankruptcy exemptions enumerated in 11 U.S.C. § 522(d). Fla.Stat. § 222.20 (1994).

1991). Complications arise when only one spouse files bankruptcy but seeks to "exempt" jointly held property. There has been a continuous dialogue in reported cases concerning this issue.[2]

In making its determination on the Trustee's objection to Debtor's exemption, the Court must first determine whether there exists a joint creditor of both the debtor and non-debtor spouse who has the ability to have process issued in its favor. *In the Matter of Anderson*, 132 B.R. 657 (Bankr. M.D.Fla.1991). As explained by Judge Baynes of the Middle District of Florida in *Anderson:*

> Assuming the inapplicability of pre-judgment garnishment or attachment, the joint creditor, who must be in existence at the time of the filing of the petition, must have the capacity to have process issue under state law; i.e., writ of execution, levy, or post-judgment attachment or garnishment.

*In the Matter of Anderson* at 660.

As further explained by Chief Judge Killian of the Northern District of Florida in *In re Boyd:*

> Where there [are] joint creditors of both spouse who under Florida law could have levied on properties held by the Debtor and non-debtor spouse as tenants by the entireties, the trustee [is] entitled to liquidate the debtor's interest in the properties. 11 U.S.C.A. § 363(h), 522(b)(2)(B). *In re Koehler,* 6 B.R. 203 (Bankr.M.D.Fla.1980); *In re Geoghegan,* 101 B.R. 329 (Bankr. M.D.Fla.1989).

*In re Boyd,* 121 B.R. 622, 624 (Bankr. N.D.Fla.1989).

Conversely, if there is no such joint creditor who under Florida law could have levied on properties held by the Debtor and non-debtor spouse, the objection should be overruled.

█ The Trustee argues that if his objection is sustained, then it is proper to allow the Trustee to utilize any joint claim as a lever to overturn an entireties status for the benefit of the general estate, not merely for the benefit of joint creditors. He further argues that, if his the objection is sustained, the Trustee, in order to deal with the Debtor's interest in a jointly held property, must proceed in accordance with § 363(h) by filing an adversary proceeding under Bankruptcy Rule 7001(3). If the Trustee meets the criteria of § 363(h), should the Debtor's interest in jointly held property be distributed only to the existing joint creditors, or must the property be distributed to all creditors?

## A. *TREATMENT OF CREDITORS*

Under the 1898 Act, the Supreme Court of the United States formulated in *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931), a guiding principle in bankruptcy administration. The facts of the case were straightforward. On December 5, 1928, Bay took a chattel mortgage on some cars, parts, and equipment belonging to the eventual debtor. The document was recorded two weeks later. A state statute provided that a chattel mortgage is deemed to be "fraudulent and void as against existing creditors ... unless at least seven days before the consummation of such ... mortgage the ... mortgagor ... shall record ... a notice of such intended mortgage." Moore, the trustee in bankruptcy, argued that the transfer was void under state law since there existed a creditor with a provable claim against the estate who had that claim at the time of the transfer. Although there was no contest regarding the invalidity of the transfer as to those creditors who were in existence prior to recordation on December 19, the trustee argued that the transfer was also void as to those creditors who had become such after the recordation, even though under the state statute they would have had no right to upset the mortgage. The Ninth Circuit Court of Appeals rejected this contention. The Supreme Court, however, accepted it, holding that the transfer was to be set aside in its entirety and the *trustee was to make only one distribution to all creditors without dis-*

---

**2.** *See, In the Matter of Anderson,* 132 B.R. 657 (Bankr.M.D.Fla.1991); *In re Boyd,* 121 B.R. 622 (Bankr.N.D.Fla.1989); *In re Geoghegan,* 101 B.R. 329 (Bankr.M.D.Fla.1989); *In re Pepenella,* 79 B.R. 76 (Bankr.M.D.Fla.1987), *rev'd sub nom. Pepenella v. Life Ins. Co. (In re Pepenella),* 103 B.R. 299 (M.D.Fla.1988).

*tinction* as to those who existed before or after the mortgage recordation. Although the decision was buffeted by substantial criticism, and despite the fact that the National Bankruptcy Conference voted to propose its statutory abrogation in 1953 and 1954, its context continues current Bankruptcy Code § 544(b). *See,* Analysis of H.R. 8200, H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6326; Analysis of S. 2266, S.Rep. 989, 95th Cong.2d Sess. 85 (1978), 4 Collier on Bankruptcy, ¶ 544.03 (15th ed. 1988).

Several courts have determined that, by analogy to the doctrine of *Moore v. Bay,* under § 70(e) of the former Bankruptcy Act and to § 544(b) of the current Bankruptcy Code, it is entirely proper to allow the Trustee to utilize a small joint claim as a lever to overturn an entireties immunity for the benefit of the general estate, not solely joint creditors. *In re Boyd,* 121 B.R. 622 (Bankr. N.D.Fla.1989); *Pepenella v. Life Insurance Co. (In re Pepenella),* 103 B.R. 299, 301 (Bankr.M.D.Fla.1988), *reversed, In re Pepenella,* 79 B.R. 76 (Bankr.M.D.Fla.1987); *In re Amici,* 99 B.R. 100 (Bankr.M.D.Fla.1989).

During the late 1980s, the doctrine of tenancies by the entirety in bankruptcy and *Moore* conflicted. Courts were split as to whether the entireties property, once brought into the estate by virtue of having filed bankruptcy, could be sold for the benefit of all creditors or only the couple's joint creditors. This split arises from the following enigma: if an individual creditor is allowed to benefit from the entireties property now within the estate, that creditor is in a better position with respect to the debtor than he would be provided under state substantive law. Likewise, if an individual creditor is not allowed this extra benefit, this would violate an aim of the Bankruptcy Code—to equalize distribution among creditors. Paul C. Wilson, *"Fresh Start" or "Head Start": Missouri Courts Rethink the Role of Tenancies by the Entirety in Bankruptcy,* 56 Mo.L.Rev. 817 (1991).

In *Pepenella v. Life Insurance Co. (In re Pepenella),* 103 B.R. 299 (Bankr.M.D.Fla.

1988), the United States District Court for the 11th Circuit overturned a decision in which the Bankruptcy Court relied on *Moore v. Bay. Pepenella v. Life Insurance Co. (In re Pepenella),* 103 B.R. 299, 301 (Bankr. M.D.Fla.1988), *reversed, In re Pepenella,* 79 B.R. 76 (Bankr.M.D.Fla.1987). In that case, the U.S. District Court reversed Judge Paskay, holding that the proceeds from the sale of the debtor's interest in jointly held property can only be distributed to the existing joint creditors.[3]

In *In re Boyd,* 121 B.R. 622 (Bankr. N.D.Fla.1989), Chief Judge Killian of the Northern District of Florida adopted the general argument in *Pepenella* and in the Middle District's *In re Geoghegan,* but rejected the idea that the debtor's interest in the jointly held property should be distributed only to joint creditors of the estate. Viewing § 726 as the only method by which property of the estate can be distributed, Chief Judge Killian reasoned that all property of the estate must be distributed as established by § 726 without any special limited distribution to the joint creditors.

In *In re Oberlies,* 94 B.R. 916 (Bankr. E.D.Mich.1988), Judge Spector stated that bankruptcy administration should not affect any change in substantive property rights. Since only joint creditors can collect from entireties property, bankruptcy law should not be interpreted to dilute that substantive right by making it subject to pro rata distribution with others who lack such rights outside of bankruptcy.

In the case of *In re Amici,* 99 B.R. 100 (Bankr.N.D.Fla.1989), the Bankruptcy Court extensively discussed the difficulties which arise when a debtor loses the benefit of exemption under 11 U.S.C. 522(b)(2)(B) vis-a-vis joint creditors. In *Amici,* the trustee argued that the properties in question were subject to liquidation pursuant to 363(h) because there were creditors who held valid claims against both the debtor and his non-debtor spouse. The debtor argued that these assets were jointly owned as tenants by the entireties, and were therefore exempt

---

**3.** *Pepenella* made no distinction whether the funds would be distributed to all joint creditors of the debtor and non-debtor, or only to the joint creditors who would have the capacity to have process issued under state law.

and not subject to liquidation pursuant to 11 U.S.C. 522(b)(2)(B). The Bankruptcy Court rejected the debtor's argument, stating:

> To accept the position urged by the Debtor would, of course, render 363(h) meaningless and would not be consistent with the expanded definition of "property of the estate" of the Code.
>
> It is equally true, however, that property held by husband and wife as tenants by the entireties has always been recognized to be immune from creditor's claims in general and the right to seek satisfaction of a claim by reaching such property was limited to creditors who held a valid and enforceable claim against both tenants, i.e., the husband and the wife.
>
> This court is satisfied that notwithstanding the use of the term "exempt from process" Section 522(b)(2)(B) is not a source of an additional exemption right created by the Code but merely a recognition by the Code of the amount of the property held by a debtor together with a non-debtor spouse as tenants by the entireties to the extent the property is immune from process under applicable local law.

*In re Amici,* 99 B.R. 100, 101 (Bankr. N.D.Fla.1989).

Judge Paskay went on to state that if a trustee is permitted to liquidate properties in question as contemplated by § 363(h), there would be a sub-class of creditors since joint creditors of the Debtor and the non-debtor spouse would be the only ones entitled to the proceeds of the sale of these properties. *Id.* This solution is totally contrary and in violation of the scheme of distribution provided by § 726 of the Bankruptcy Code. The remaining unsecured creditors, who do not have a claim against both the Debtor and the non-debtor spouse, would not receive equal treatment to that of the joint creditors although legally holding claims of equal rank. *Id.* at 101–102. This Court agrees.

**B. *ARE THERE JOINT CREDITORS WHO UNDER FLORIDA LAW COULD HAVE LEVIED ON ENTIRETIES PROPERTY AT THE TIME OF FILING?***

■ Where there are joint creditors of both spouses who under Florida law could have levied on properties held by the Debtor and non-debtor spouse as tenants by the entireties, the trustee is entitled to liquidate the debtor's interest in the properties. 11 U.S.C.A. § 363(h), 522(b)(2)(B). As previously discussed, Judge Baynes of the Middle District of Florida succinctly stated the law in *Anderson:*

> Assuming the inapplicability of pre-judgment garnishment or attachment, the joint creditor, who must be in existence at the time of the filing of the petition, must have the capacity to have process issue under state law; i.e., writ of execution, levy, or post-judgment attachment or garnishment. *In the Matter of Anderson* at 660.

■ There are two joint debts in this case. First is a mortgage in favor of Coral Gables Federal Savings and Loan Association ("Coral Gables Federal") encumbering the Warehouse at 7152 N.W. 50th Street, Miami, Florida. As of the petition date, the outstanding balance due Coral Gables Federal was $114,093.80. Second is a mortgage on the Debtor's homestead, which is claimed exempt pursuant to Article X, Section 4, of the Florida Constitution and Chapter 222 of the Florida Statutes. The Trustee has not objected to the Debtor's claimed homestead exemption. Accordingly, there exists a single joint debt consisting of the Warehouse mortgage. As a joint creditor, Coral Gables Federal could have levied on the Warehouse under Florida law. Therefore, it is not necessary that the joint creditor have a writ of execution or a final judgment, or even a default on the debt. It is only necessary that the creditor be entitled to levy as one of the package of rights which belong to the joint creditor. The Trustee is entitled to liquidate the Debtor's interest in that property. 11 U.S.C.A. § 363(h), § 522(b)(2)(B).

**C. *ARE THE BANK ACCOUNTS AND STOCK CERTIFICATES HELD AS TENANTS BY THE ENTIRETIES?***

Under Florida law, when property is held as tenancy by the entirety, it cannot be reached by a creditor to satisfy the individual

debt of one spouse unless it meets the criteria set out above. *In re Blum*, 39 B.R. 897 (Bankr.S.D.Fla.1984). Before considering the 11 U.S.C. § 363(h) issue, the threshold issue in this matter is whether Debtor's scheduled personalty, consisting of a bank account, brokerage account and stock certificates, is held as tenants by the entirety.

■ A viable tenancy by the entirety, with regard to either realty or personalty, must possess always and at the same time five unities: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests must be the same); (3) unity of title (the interests must originate in the same instrument); (4) unity of time (the interests must commence simultaneously); and (5) the unity of marriage. *First National Bank of Leesburg v. Hector Supply Co.*, 254 So.2d 777 (Fla.1971).

■ Although the Merrill Lynch account is titled only in the names of Mr. and Mrs. Planas, Celia R. Novo, Mrs. Planas's mother, is authorized to execute checks as agent and attorney. Mrs. Novo's power to individually alienate the assets Mr. and Mrs. Planas's Merrill Lynch account is inconsistent with the essential unity of possession, or control. Moreover, on the last account application the Planases designated the account "JTWROS: Joint Account with Right of Survivorship" notwithstanding that the application provided the option of designating the account "ATBE: As Tenants by Entirety (for married persons, only in states where applicable." Based on these facts, the Court determines that the Merrill Lynch account is not entireties property. The Trustee's objection to Debtor's claimed exemption of the Merrill Lynch account is sustained. The account balance as of the petition date was $67,-000.00. The Trustee shall administer Debtor's interest in this account, approximately $33,500.00, for the benefit of the estate.

■ The Debtor asserts that the source of the funds in the SunBank account are both his and his wife's wages, and are therefore exempt as entireties property. The Court must reject this argument because this account, like the Merrill Lynch account, is inconsistent with the essential unities of the

entireties estate. The SunBank account is titled not just in the names of the Debtor and his spouse, but is titled in four different names. During the period between January 1, 1994 and December 30, 1994, the petition date, Mr. Planas, Mrs. Planas, their daughter, Sylvia M. Planas, and Mrs. Planas's mother, Celia R. Novo, were all account holders of the SunBank account. Accordingly, this account is not entireties property under Florida law. The Trustee's objection to Debtor's claimed exemption of the SunBank account is sustained. The balance of this account as of the petition date was approximately $300.00. The Trustee shall administer the Debtor's interest in this account, approximately $150.00, for the benefit of the estate.

Assuming the stock certificates are in fact tenancy by the entireties property, they are likewise subject to 11 U.S.C. § 363(h) and § 522(b)(2)(B).

### D. MAY THE DEBTOR EXEMPT PROPERTY HELD AS TENANCY IN THE ENTIRETY?

Debtor claims certain exemptions consisting of the following:

● Household goods with a scheduled value of $3,000.00;

● Art objects with a scheduled value of $1,000.00;

● A warehouse located at 7152 Northwest 50th Street, in Miami, Florida with a scheduled value of $137,110.00.

In support of his claimed exemption for household goods and art objects, Debtor relies upon the case of *In re Avins*, 19 B.R. 736 (Bankr.S.D.Fla.1982), which stands for the proposition that Florida recognizes the estates by the entireties and exempts such property from the claims of creditors of an individual spouse. *Avins*, 19 B.R. at 737. This Court finds Debtor's reliance upon *Avins* inapplicable since there are joint creditors in the case at bar. Therefore, the Debtor is not entitled to the exemption on this basis.

Debtor claims the Warehouse is exempt pursuant to *Avins* and Article X, § 4 of the Florida Constitution. As previously stated,

*Avins* is inapplicable to this case. The Warehouse is subject to 11 U.S.C. § 363(h) and § 522(b)(2)(B).

### CONCLUSION

Based on the Court's above discussion and analysis, the Trustee's objection to claimed exemptions in the Debtor's and non-debtor spouse's bank accounts is sustained. The sums of approximately $33,500.00 in the Merrill Lynch account and $150.00 in the SunBank account shall be administered by the Trustee and distributed for the benefit of the estate.

The Trustee's objection to Debtor's claimed exemption of the stock certificates is sustained.

The Trustee's objection to Debtor's claimed exemption of the Warehouse is sustained.

The Trustee's objection to Debtor's claimed exemption of certain household goods and art objects is sustained, but without prejudice to Debtor amending his schedules to claim his half interest in these items exempt under Article X, § 4 of the Florida Constitution.

DONE and ORDERED.