In re Sylvan SCHACHTER, Debtor.

LINI, INC., Plaintiff,

v.

Sylvan SCHACHTER, Defendant.

**Bankruptcy No. 97–12078DAS.**

**Adversary No. 97–067DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 10, 1997.

Richard H. Elliott, Aglow, Elliott & Magee, John F. Murphy, Doylestown, PA, for Debtor.

Mary F. Walrath, Jacoby Donner, P.C., Philadelphia, PA, for Plaintiff.

Barry A. Solodky, Lancaster, PA, Trustee.

Frederic Baker, Philadelphia, PA, Assistant U.S. Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

Presently at issue in this individual voluntary Chapter 7 case of a married man, SYLVAN SCHACHTER ("the Debtor"), are the objections of LINI, INC. ("the Plaintiff") to both his discharge and many of his claimed exemptions. We find the evidence of the Debtor's significant fraudulent post-petition transfers and his inability to explain his expenditures of $250,000 realized in a 1990 mortgage refinancing transaction and of his unreported income are sufficient to deny his discharge under 11 U.S.C. §§ 727(a)(2)(B) and (a)(5). We therefore need not decide whether the Debtor's pervasive omissions and misstatements on his Schedules and Statement of Financial Affairs ("the Statement") would justify a denial of discharge under § 727(a)(4)(A) when the § 727(a)(4) claim pleaded sounds only under § 727(a)(4)(D).

We find the Plaintiff's objections to the Debtor's exemptions timely, since they were filed within 30 days of an amendment changing his election of federal exemptions to state exemptions. We conclude that the exemptions claimed for two residences owned by the Debtor and his nondebtor wife by entireties and a few other items claimed are allowable as to the Plaintiff, since it is not a joint creditor. However, the cars and boat titled to the Debtor only at the time that the case was filed and numerous items of property omitted from the Schedules entirely, including significant bank accounts, cannot be claimed as exempt.

## B. PROCEDURAL HISTORY

The bankruptcy case in issue was filed on February 20, 1997. Barry A. Solodky, Esquire ("the Trustee"), conducted the meeting of creditors on April 21, 1997. His postmeeting letters to the Debtor's counsel, Richard H. Elliott, Esquire, indicate that the Trustee withheld filing a no-asset report pending receipt of amendments to the Debtor's Schedules. The original Schedules claim the following property as exempt under 11 U.S.C. § 522(b)(1), which invokes the federal allowances at § 522(d): residences in New Hope,

Pennsylvania, and Florida, both held as tenancies by the entireties with his nondebtor wife and valued at $600,000 and $250,000, respectively; a checking account balance of $1,236; a pension of $147; and a 1990 Volvo automobile, a 1988 Chevrolet truck, and a skiff valued at $4,000, $1,500, and $2,000, respectively. On June 7, 1997, the Debtor filed amended Schedules listing the same property at the same values, except for the minor additions, *e.g.*, a 1978 Oldsmobile valued at $100, but referencing § 522(b)(2), which invokes Pennsylvania state law exemptions.

On June 6, 1997, the Plaintiff, a creditor whose federal litigation against the Debtor was halted by the bankruptcy filing on the eve of trial, filed objections to the Debtor's amended exemption claims ("the Objections"). And on June 20, 1997, the Plaintiff filed the instant adversary proceeding ("the Proceeding") challenging the Debtor's discharge under §§ 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(6), and the dischargeability of its own particular debt under § 523(a)(2).

On June 30, 1997, the Trustee wrote to Elliott, stating, in relevant part, as follows:

You should ... consider this letter as an objection to claim of exemption until the requested documentation is provided. The Trustee has not yet filed his Reports with the court and will not do so until I receive all information requested at the 341 Meeting. Any Reports filed with the court will indicate that the First Meeting was not concluded but was continued until a later date when all information is supplied....

The record also contains later letters from the Trustee to Elliott in which the Trustee indicates that he believes that $37,174.58 located in a bank account of the Debtor is not held in trust, is therefore property of his estate, and is not exempt. However, no further efforts by the Trustee to "complete" the meeting of creditors are referenced in the record.

The Objections were initially scheduled for a hearing on July 16, 1997. This hearing was continued to the initial trial date of the Proceeding on August 6, 1997. Both matters were continued on a must-be-tried basis until

September 30, 1997, at which time they were heard together in a six-hour trial. Representing the Debtor at trial with Elliott was John F. Murphy, Esquire, an experienced bankruptcy attorney who served as a law clerk for several years to two different chief bankruptcy judges. The parties were directed to file briefs by October 14, 1997 (the Plaintiff), and October 28, 1997 (the Debtor). On September 4, 1997, in response to the Trustee's advice that he considered this an asset case, he was accorded until March 2, 1998, to file Final Audit papers in this case.

## C. FACTUAL HISTORY

The only witnesses adding to the Debtor's lengthy testimony, mostly adduced as of cross-examination by the Plaintiff, were two experts called by the Plaintiff, Stephen Scherf, an accountant and "certified fraud examiner," who commented on the Debtor's tax returns; and Celia Woronowicz, a computer engineer, whose proffered expert testimony was not admitted by this court.

The principal business of the Debtor, who is in his late 60's, for the last twelve (12) years has been serving as sole proprietor of General Services Group ("GSG"), a business which markets extended motor vehicle warranties through automobile dealerships. The Plaintiff's claims arose from a side venture in which Robert Bell, the husband of the Debtor's former bookkeeper Stephanie Bell, was the principal. The Debtor claimed that his liability to the Plaintiff arose from embezzlements by the Bells. The factual allegations in the Complaint address, for the most part, the Plaintiff's transactions with Robert Bell. However, the testimony at trial did not focus extensively on this venture and little evidence of any such embezzlement was presented.

What the testimony did focus upon was the substantial assets of the Debtor which were the subject of prepetition and post-petition transfers and the failure of the Debtor to identify certain assets or these transfers in his bankruptcy Schedules. It was established that, on that date of filing, the Debtor had $52,420.87 in a GSG bank account, not including $15,000 which he deposited on that date into an undisclosed joint bank account. On February 25, 1997, five days after the filing, he deposited another $5,000 into another undisclosed joint bank account in Florida. The Debtor also established a new joint account at another local bank into which he deposited $7,500 on March 12, 1997, and a total of about $65,000 in the month of March. Further, the Debtor deposited $1,000 into his wife's checking account in March 1997 and $6,689 into that account in April 1997, the source of the funds for which he denied recalling. On September 11, 1997, the Debtor withdrew $100,000 from the GSG account and gave it to his wife to purchase a certificate of deposit.

The Debtor did not undertake to explain why he disclosed only a single $1,236 bank account in both his original and his Amended Schedules. He did contend that the amounts in the GSG account were deceptively large because they included sums which he was obliged to pay over to a reserve account for his customer-dealerships and to the motor vehicle warranty insurers. He likened these sums to a "pass through" and claimed that they established trusts in favor of the dealers and the insurer.

The foregoing activity was not reflected in any manner on the Schedules. The Debtor disclosed monthly employment income of $5,500, Social Security benefits of $850, and pension benefits of $147. This income of $6,497 monthly was offset by reported expenditures of $7,450 monthly. However, Scherf's testimony established, with virtually no rebuttal, that the Debtor's income was in fact at least $150,000 annually. Further, Scherf testified that the Debtor's tax returns established that his actual annual income for the past several years was approximately $200,000. The Debtor also admitted that he was actually receiving Social Security old-age benefits of $1,300 monthly, although Scherf noted that his earnings should have rendered him ineligible for any such benefits. The Debtor conceded that the pension was $147 monthly, not a $147 asset as reported, and that he also owned an Individual Retirement Account ("IRA"), the existence of which was not disclosed and the amount of which was not disclosed even in this record.

It was also brought out that the Debtor filed the Statement without the last page of questions included, thereby avoiding questions about the nature, location, and name of any business; books, records, and financial

statements; and withdrawals and distributions by the business. However, in the pages of the Statement which were included, he falsely stated that he had paid only his mortgage debt 90 days before filing, omitting significant payments to the dealerships and the insurer; had not made any gifts over $200 in the past year when he had given both of his daughters several gifts in excess of this amount; had not closed any bank accounts in the past year when he had done so; had no safe deposit box when there was a box in his wife's name to which he had access; and held no money for others despite his present claims of a pass-through or trust in favor of the dealerships and the insurer.

The Debtor described a refinancing of his New Hope home in 1990, wherein he borrowed $500,000, $250,000 of which was used to pay off a prior mortgage. The Debtor's only explanation of what happened to the $250,000 proceeds received by him from this transaction was that he spent it, vaguely referencing obligations to a disabled adult daughter, payment of unspecified debts, and deposits in an unverified mutual fund account.

The Debtor admitted that all three vehicles listed as jointly owned on his amended Schedules were in fact titled to him individually. He also admitted that, on March 17, 1997, after the bankruptcy filing, he transferred the title of the skiff from himself to him and his wife jointly. Finally, he conceded that he had omitted from his Schedules all of the furnishings in his two large homes, allegedly jointly-owned; his own jazz record collection; a jointly-owned antique porcelain collection; jointly owned artwork; and a rowboat and a shotgun presumably owned by him individually.

### D. DISCUSSION

1. *THE DEBTOR IS NOT ENTITLED TO A DISCHARGE UNDER §§ 727(a)(2)(B) OR (a)(5), RENDERING IT UNNECESSARY FOR U.S. TO DECIDE WHETHER THE PLAINTIFF HAS PROPERLY PLEADED ITS CLEARLY–PROVEN § 727(a)(4)(A) CLAIM.*

In its post-trial submission the Plaintiff stated that it was not pursuing its § 523(a)(2) nondischargeability claim. However, its § 727 claims discussed therein "covered the waterfront," especially invoking §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), (a)(5), and (a)(6)(A), which provide as follows:

(a) The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowing and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

(5) the debtor has failed to explain satisfactorily, before determination of

denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

. . .

■ It is well-established that the Plaintiff was obliged to prove any of these grounds by a preponderance of the evidence. *See In re Blanchard*, 201 B.R. 108, 114 (Bankr.E.D.Pa. 1996), citing, *e.g.*, *Grogan v. Garner*, 498 U.S. 279, 282–89, 111 S.Ct. 654, 656–61, 112 L.Ed.2d 755 (1991).

■ The evidence of record clearly establishes valid causes of action under §§ 727(a)(4)(A), (a)(2)(B), and (a)(5). As we stated in *In re Segal*, 195 B.R. 325, 332 (Bankr.E.D.Pa.1996),

to establish a § 727(a)(4)(A) claim, the Plaintiff must demonstrate that (1) a false oath or statement was made by the Debtor, (2) knowingly and fraudulently, (3) which was material to the course of the bankruptcy case. *See In re Henderson*, 134 B.R. 147, 160 (Bankr.E.D.Pa.1991); and *In re Woerner*, 66 B.R. 964, 971–72 (Bankr.E.D.Pa.1986), *aff'd*, C.A. No. 86–7324 (E.D. Pa. April 28, 1987). *See also In re Staffieri*, 1994 WL 463978, at *3–*4 (Bankr.E.D.Pa. Aug. 23, 1994), *aff'd sub nom. Obermayer, Rebmann, Maxwell & Hippel v. Staffieri*, [1995 WL 339019 (E.D.Pa. June 5, 1995) ]; *In re Freedman*, 1994 WL 455030 (Bankr.E.D.Pa. Aug. 19, 1994), *aff'd*, 1995 WL 118217 (E.D.Pa. March 9, 1995); and *In re Ok Cha Nam*, 1993 WL 541135, at *6–*7 (Bankr.E.D.Pa. May 19, 1993), *aff'd*, 1995 C.A. No. 94–5439 (E.D.Pa. May 1, 1995); *aff'd*, 77 F.3d 463 (3d Cir.1996).

*Accord, In re Ishkhanian*, 210 B.R. 944, 955 (Bankr.E.D.Pa.1997).

■ The vast array of false statements made by the Debtor in his Schedules and Statement are catalogued at pages 771–772 *supra*. These include the Debtor's understating his income at about one-third of its actual amount of $150,000 to $200,000 annual-ly; omitting numerous substantial bank accounts; and omitting or erroneously asserting joint ownership of substantial personalty. These disclosures are material; indeed, the disclosures of income and assets are central to any bankruptcy case. These pervasive and immense errors, all to the Debtor's benefit, clearly support the conclusion that the violations were "knowing" and "fraudulent." Indeed, the Debtor impressed us as a witness lacking credibility and as possibly concealing additional assets which have not yet come to light. *See In re Mistry*, 77 B.R. 507, 512–13 (Bankr.E.D.Pa.1987), *aff'd*, C.A. No. 87–6466 (E.D.Pa. Feb. 9, 1988); and *In re Somerville*, 73 B.R. 826, 833, 837, 838 (Bankr.E.D.Pa. 1987) (an assessment of a debtor's general credibility or lack thereof is critical in deciding the merits of discharge/dischargeability actions).

The disclosure violations at issue here are more severe than those at issue in another case in which we denied the debtor's discharge under § 727(a)(4)(A), *Freedman, supra*, 1994 WL 455030, at *4–*6 (debtor under-reported his income by about half and failed to disclose several modest bank accounts). They rival the outrageous discrepancies between disclosure and reality at issue in another case in which we denied the debtor's discharge under § 727(a)(4)(A), *In re Katz*, 203 B.R. 227, 232–36 (Bankr.E.D.Pa. 1996), *aff'd*, C.A. No. 97–550 (E.D.Pa. Sept. 10, 1997) (debtor disclosed no income and assets totalling $250, but was described as living a life of luxury). Indeed, since relatives apparently were providing liberal support to the *Katz* debtor, the disclosures by the instant Debtor are even more obviously falsified and egregious than those at issue in *Katz*.

■ The § 727(a)(2)(B) violations, while perhaps not so obvious as the § 727(a)(4)(A) violations, were also clearly proven. After the filing of the petition, the Debtor transferred substantial funds from his individual bank accounts to joint accounts with his wife and to his wife individually. And he transferred the skiff into joint names. These actions were not disclosed to the Trustee despite his several inquiries and might have gone undetected were it not for the Plaintiff's

persistence in investigating the Debtor's financial affairs. Having perceived the Debtor's evasiveness on the stand, we have little hesitation in concluding that those transfers were designed to hinder, delay, or defraud creditors.

■ As the Plaintiff observes, the courts have developed a series of indicators of fraudulent intent, known as "badges of fraud," which courts weigh to determine whether actual fraudulent intent pervades a transfer. These include the following:

(1) lack of or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question, although title exists in another entity;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) conveyance of all of the debtor's property;

(6) secrecy of the conveyance;

(7) existence of a trust or trust relationship between the debtor and the person to whom the property was conveyed;

(8) the existence or cumulative effect of a pattern or series of transactions or a course of conduct after incurring the debt, onset of financial difficulties, or pendency or threat of suit by creditors;

(9) the instrument affecting the transfer suspiciously states it is in fact bona fide;

(10) the debtor makes a voluntary gift to a family member; and

(11) the general chronology of events and transactions under inquiry.

See, e.g., In re Main, Inc., 213 B.R. 67, 79 (Bankr.E.D.Pa.1997); and In re Ishkhanian, 210 B.R. 944, 952 recited in 12 Pa.C.S. § 5104(b), also quoted in Main, supra, at 78–79.

We agree with the Plaintiff's analysis that "badges" (1), (2), (3), (6), (7), (8), (10), and (11) pervade these transfers. Furthermore, badges (4) and (5) are implicated when it is considered that the Debtor was attempting to make himself appear a no-asset filer by means of these conveyances. Only the absence of any instrument at all reflecting these transfers prevents the presence of "badge" (9) and hence all of the "badges" from appearing. We therefore have little doubt that the conveyances at issue are tainted with the Debtor's intent to hinder and defraud the Trustee and the body of the Debtor's creditors, including the Plaintiff. Compare Main, supra, at 83–85.

■ Finally, we conclude that § 727(a)(5) is implicated. As we noted in In re Cook, 146 B.R. 934, 935–36 (Bankr.E.D.Pa. 1992); and In re Trinsey, 114 B.R. 86, 91 (Bankr.E.D.Pa.1990), this ground is somewhat easier to prove than claims under §§ 727(a)(2) or (a)(4) because there is no scienter requirement. Nevertheless, this ground for denial of a discharge is confined to those instances where the debtor offers no credible explanation for the loss or deficiency of assets. See Ishkhanian, supra, 210 B.R. at 953. It is therefore an easy ground for an honest debtor to overcome.

■ The Debtor, however, proving himself to be other than an honest debtor, founders in the face of this ground for denial of discharge. The Plaintiff properly focuses on the Debtor's inability to explain the loss or expenditure of the $250,000 which he realized when he refinanced his home in 1990. This is a very large sum for which the Debtor should be called to account, despite the passage of seven years. Moreover, there are other unexplained losses as well. No account is given for the actual expenditure of the Debtor's grossly-understated income. Also, the disappearances of the funds deposited in the GSG and the other bank accounts accessed by the Debtor raise unanswered § 727(a)(5) questions.

An evasive person, like the instant Debtor, is likely to have difficulties with § 727(a)(5) even if he overcomes other § 727(a) grounds. Thus, the Cook debtor, who provided copious but unintelligible records which were unable to explain the disappearance of $676,000 realized as proceeds of sales of properties over a two-year period, was denied his discharge on this ground. 146 B.R. at 940–43. In Trinsey the debtor, who prevailed on §§ 727(a)(2) and (a)(4) claims against him, was denied a

discharge because he failed to provide an explanation for the expenditure of $71,000 realized from the sale of his realty assets over an 11–month period. 114 B.R. at 91–92.

In his 41–page brief in response to that of the Plaintiff, the Debtor devotes most of his energy, *i.e.*, the first 31 pages, to defense of the Objections. By way of contrast, the Plaintiff addresses its § 727 claims in the first 32 pages of its 43–page brief. The principle argument advanced by the Debtor, as to almost every Count challenging his discharge, is the same: a critique of the Plaintiff's pleading. It will be recalled that the Complaint focused on the Plaintiff's transactions with the business involving Robert Bell, which was mentioned at trial only in passing. The only other factual allegations in the Complaint relate to the Debtor's alleged failure to provide information to the Trustee. The legal claims recited in the Complaint follow from the factual allegations alleged therein, which differed from the facts established at the trial. The Complaint nevertheless clearly invokes § 727(a)(2)(B), by specifically attacking transfers "after the filing of the petition."

The Debtor also complains that fraud and its "badges" are not pleaded with particularity. Although fraud is not an element of a § 727(a)(5) claim, the Debtor, as to this ground, contends that the Complaint is deficient because it references no particular transfers and certainly not one relating to a transaction in 1990. The Debtor also picks up on the court's observations, at the close of the trial, that the § 727(a)(4) Count of the Complaint paraphrases § 727(a)(4)(D), reciting that the Debtor "withheld from the Trustee" certain information, instead of alleging that the Debtor made false oaths or accounts, either in his Schedules or elsewhere, as is the substance of § 727(a)(4)(A).

The Plaintiff's response to the last argument is that it could easily move to amend its Complaint to add a § 727(a)(4)(A) Count. The contention that it could do so at this juncture is not totally convincing for two reasons. First, it has made no formal motion to amend its pleadings. *See Ishkhanian, supra,* 210 B.R. at 955. Second, it fails to appreciate that a claim can relate back to

pre-date the running of the bar date for filing objections to discharge or dischargeability only if the original complaint gave the Debtor fair notice of the facts underlying the new claims. *See id.;* and *Segal, supra,* 195 B.R. at 330. As in *Ishkhanian,* 210 B.R. at 955, we note that we are unimpressed with the argument that the Debtor's failure to disclose, prior to the bar date, facts ultimately found relevant excuses a late § 727(a)(4)(A) claim. It is the duty of an objecting party to make discovery regarding all grounds for a discharge/dischargeability prior to the bar date.

However, we are not much troubled by the Debtor's arguments that the §§ 727(a)(2)(B) and (a)(5) claims were not sufficiently specifically pleaded. In *In re Kasal,* 213 B.R. 922, 925–26, 932–33 (E.D.Pa.1997), we recently let stand a complaint which not only failed to plead *any* facts but also merely invoked § 727(a)(4)(A) and inexplicably also asserted nondischargeability claims. *See also In re Smith,* 46 B.R. 299, 300 (Bankr.D.Me.1985) (defective complaint allowed to stand in light of probability that the debtor's experienced bankruptcy practitioner would understand the claims made).

Picking up on the point made in *Smith* regarding experienced counsel, we note that Murphy, wisely hired by the Debtor prior to trial, is by any definition a skilled bankruptcy practitioner. Nevertheless, neither Murphy, nor Elliott seated beside him at trial, voiced any objection to the evidence presented in obvious furtherance of a § 727(a)(4)(A) claim by the Plaintiff during the course of the trial. Nor did they at any time during the trial object to the admission of any evidence presented as beyond the allegations of the Complaint. Nor did they request a continuance to enable them to prepare an adequate defense against "unexpected" claims, as the court in *In re Beaubouef,* 966 F.2d 174, 176–77 (5th Cir.1992), holds is necessary to dispute the presentation of new claims at trial.

We can distinguish the instant facts from those where we denied motions to amend to add new claims, *e.g., Ishkhanian,* 210 B.R. at 954–56; *Segal, supra,* 195 B.R. at 330–32; and *Staffieri, supra,* at *4. In *Staffieri,* the plaintiff did not seize upon § 727(a)(4)(A)

until this court, in summing up, noted that an unarticulated § 727(a)(4) claim might have had merit. Id. In *Ishkhanian, supra,* 210 B.R. at 955–56; and *Segal, supra,* 195 B.R. at 330–31, we observed that the added claims were significantly different from those pleaded, and objections to changing the grounds for suit were timely protested by the respective debtors. Further, we noted that the merits of the claims sought to be added were not supported by the record in any event. *Ishkhanian, supra,* 210 B.R. at 956; and *Segal, supra,* 195 B.R. at 331–32.

Here, the § 727(a)(4)(A) claim clearly has merit. Section 727(a)(4) is invoked by the Complaint, although without reference to any subsection and supported by language which paraphrases § 727(a)(4)(D) rather than § 727(a)(4)(A). The Debtor never objected to the Complaint's lack of specificity in his Answer to the Complaint, nor at trial until this court raised the issue in its summation. In contrast to unfairly surprising the Debtor with an unplead claim, the instant scenario is one where the Plaintiff logically assumed that the Debtor agreed that a § 727(a)(4)(A) claim could be raised under the pleadings as they stood until the end of the trial. In this scenario, it is more properly the Plaintiff, as opposed to the Debtor, who could claim unfair surprise at the hands of an objection to trying the § 727(a)(4)(A) claim without further formal amendment to the Complaint at the end of the trial.

This court does not wish to promulgate inaccurate or sloppy pleadings. Lead counsel for the Plaintiff, Mary F. Walrath, Esquire, is also an experienced bankruptcy attorney and former bankruptcy law clerk, whose pleadings we would expect to be seamless. Perhaps a less-experienced associate prepared the Complaint. However, since the pleading of the §§ 727(a)(2)(B) and (a)(5) claims, which are meritorious if less obviously so than the § 727(a)(4)(A) claim, are sufficient to carry the day for the Plaintiff, we need not decide whether the § 727(a)(4)(A) claim can be properly asserted in these circumstances.

Similarly, we find it unnecessary to probe the Plaintiff's § 727(a)(3) claim, which is even less obvious than the foregoing claims, but could possibly prevail on the ground that the Debtor has very reluctantly provided information relative to his financial condition and business transactions. Finally, as to its § 727(a)(6)(A) claim, the Plaintiff has not presented evidence that the Debtor violated actual court orders requiring production of documents; we question whether a failure to respond to the Trustee's requests could constitute a failure to obey a "lawful order of the court."

### 2. *THE DEBTOR IS ENTITLED TO EXEMPT THE HOMES HE OWNS BY THE ENTIRETIES WITH HIS WIFE AS TO THE PLAINTIFF, WHICH IS ONLY HIS INDIVIDUAL CREDITOR, BUT HE CANNOT EXEMPT THE MOTOR VEHICLES AND SKIFF IN HIS NAME ALONE AT THE TIME OF FILING NOR HIS NUMEROUS UNLISTED ASSETS.*

The Debtor, perhaps sensing the likely denial of his discharge, devotes most of his brief to minimizing his losses by defending his claims of exemptions. The first line of defense is a contention that the Objections are untimely. This argument invokes the spirit of the ruling in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–46, 112 S.Ct. 1644, 1648–50, 118 L.Ed.2d 280 (1992), that the deadline set forth in Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 4003(b) requiring objections to exemptions to be filed within thirty (30) days after the conclusion of the meeting of creditors must be strictly construed. Added to this is the contention that, although the 30-day period runs from any amendment, it does not begin to run anew as to items which are claimed in initial claims to which objections were not raised and which were not altered by amendments. *See Bernard v. Coyne,* 40 F.3d 1028, 1032 (9th Cir.1994); and *In re Kazi,* 985 F.2d 318, 323 (7th Cir.1993). The Debtor argues that he claimed the precise same ten (10) items at the same values on his amended Schedules as on his original Schedules. He "merely" changed the basis of his exemptions from federal law, pursuant to § 522(b)(1), to state law, pursuant to § 522(b)(2).

As the Plaintiff points out, this reasoning overlooks the fact that the change of the Debtor's claims for exemption from a federal law basis to a state law basis is itself extremely significant, particularly in reference to the instant Objections which contend that state law was misapplied. We agree that such a change is pervasive in its impact and that exemptions based on Pennsylvania law present far different considerations than the prior claims under federal law. Hence, we find the amended exemption claims are, in effect, new claims of exemptions which restart the 30–day time-clock under the language of F.R.B.P. 4003(b), measuring the time from "the filing of any amendment to the list or supplemental schedules...."

■ The Plaintiff also argues that the Trustee's letter of June 30, 1997, indicating that the meeting of creditors had not yet been concluded, should extend the F.R.B.P. 4003(b) 30–day period, apparently indefinitely. While there is some support for this viewpoint, e.g., In re Flynn, 200 B.R. 481, 484 (Bankr.D.Mass.1996), it is not convincing to this court. We are particularly reluctant to employ this reasoning where neither the docket nor anything of record except the Trustee's after-the-fact, self-serving letter supports the contention that the meeting was not concluded on its originally-scheduled date. There is no indication that the Trustee actually intends to reconvene the meeting at any time, and he has not done so in the six months since the April 21 meeting. Neither the Trustee nor creditors should rely on such an artificial means of extending the F.R.B.P. 4003(b) deadline. Certainly, this viewpoint is contrary to the spirit if not the letter of Taylor. See In re Levitt, 137 B.R. 881 (Bankr.D.Mass.1992).[1] In any event, the Objections here were timely because they were filed within 30 days after the Debtor's complete overhaul of his exemptions effected by the amendments.

■ Nevertheless, as the Debtor goes to some length to point out, several of the arguments raised by the Plaintiff, particularly those attacking the claim of exemption of the residences, are substantively groundless. In particular, the Plaintiff launches into a discussion of the Debtor's "true" domicile, contending that it is Pennsylvania rather than Florida and that this conclusion adversely impacts the claim that the Debtor's Florida home is exempt. However, as the Debtor points out, the Debtor's domicile is irrelevant because the law controlling the Debtor's right to exempt the Florida real estate is the law of the situs of that real estate, i.e., Florida. See In re Kaplan, 162 B.R. 684, 698 (Bankr.E.D.Pa.1993), aff'd on this point sub nom. Kaplan v. First Options of Chicago, Inc., 189 B.R. 882, 891–92 (E.D.Pa.1995).

■ The Plaintiff then cites In re Planas, 199 B.R. 211, 214–15, 217 (Bankr.S.D.Fla. 1996), for the apparent principle that the presence of a single joint creditor eliminates the exemption of entireties' property as to all creditors, even as to creditors of the Debtor individually, such as the Plaintiff. We do not read Planas to so hold, but rather believe that it concludes that the entireties property in issue is not exempt as to joint creditors only. This is clearly the law of this jurisdiction. See Napotnik v. Equibank, 679 F.2d 316, 319–21 (3d Cir.1982); and In re Garafano, 99 B.R. 624, 634–35 (Bankr.E.D.Pa.1989).

Further, unlike New Jersey law, which was applicable to the Kaplan debtor's New Jersey real estate, the law of Florida appears to be the same as that of Pennsylvania on the relevant issue that entireties property is exempt from process under applicable non-bankruptcy law. See United States v. American Nat'l Bank, 255 F.2d 504, 506 (5th Cir.1958), cert. denied, 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed.2d 72 (1958); In re Himmelstein, 203 B.R. 1009, 1013, 1015–16 (Bankr. M.D.Fla.1996); and Meyer v. Faust, 83 So.2d 847, 848 (Fla.1955). Consequently, the Debtor is correct that the Florida home, be it the Debtor's domicile or homestead or neither, is exempt under § 522(b)(2)(B).

We also agree with the Debtor's contention that his clothing is exempt under 42 Pa.C.S. § 8124(a)(1) and his pension is exempt under

---

1. To the unasked question, "What can a trustee do in these circumstances?," we answer, "When in doubt, file a timely objection." Had the Debt- or never filed the requested amendment, the Trustee and the creditors would have been left without recourse on the basis of Taylor.

42 Pa.C.S. § 8124(b)(ix). At that point, however, we part company with the Debtor in his attempts to justify his claims of exemptions.

 We do not agree that the vehicles and the skiff are exempt. These items were titled to the Debtor alone as of the date of the bankruptcy filing. The attempt, and we agree with the Plaintiff that it was fraudulent, to transfer the skiff to joint ownership after the filing of the bankruptcy case at issue is voidable under § 549(a). Assuming *arguendo* that we believed the Debtor's undocumented testimony that the motor vehicles were paid for by proceeds from the parties' joint accounts, this fact would not make them entireties property. The vehicles were titled as they were, per the Debtor, to minimize joint liability in the event of an accident. The Debtor must accept the burdens as well as the benefits of so titling these vehicles, and hence they must be considered as property of the Debtor individually for all purposes. It is, moreover, likely that the Debtor made the deposits into the joint accounts allegedly utilized to make these purchases with his individual earnings.

It is difficult to understand how the furnishings of the Debtor's own office could be claimed to be entireties property. The only other exemptions claimed are for cash of $145.50 and checking account proceeds of $1,236.00.

 No other property is claimed as exempt. It is well-established that, if a debtor fails to claim certain property as exempt, it is not exempt. *See* F.R.B.P. 4003(a); *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); *In re Wickstrom*, 113 B.R. 339, 347 (Bankr.W.D.Mich. 1990) ("[i]f a debtor fails to specifically exempt entireties' property, the trustee may sell the debtor's interest in such property...."); *In re Roberts*, 81 B.R. 354, 363 (Bankr.W.D.Pa.1987) (debtor not entitled to claim property the existence of which he voluntarily failed to uncover to the trustee);

and *In re Yancy*, 23 B.R. 945, 950 (Bankr. E.D.Mich.1982). While the Debtor's inaccuracy in the value of a particular asset does not in itself render the claim invalid, when liquid assets such as cash or the contents of bank accounts are grossly understated, such a claim should be recognized as valid to only the amount claimed as exempt.

 Moreover, concealment of an asset bars exemption of that asset. *See In re Doan*, 672 F.2d 831, 833 (11th Cir.1982); *In re Sumerell*, 194 B.R. 818, 832–38 (Bankr. E.D.Tenn.1996); *In re St. Angelo*, 189 B.R. 24, 25–26 (Bankr.D.R.I.1995); and *In re Magnuson*, 113 B.R. 555, 560 (Bankr.D.N.D. 1989). The Debtor has chosen not to list the contents of his bank accounts in excess of $1,236.00, his shotgun, his IRA, his jazz-record collection, the possibly jointly-owned antique porcelain collection and artworks, his interest in jointly-owned household furnishings, and any other property in which he has an interest, as exempt property. The Trustee may proceed to sell these items or, if the property is held by the entireties, to sell the Debtor's interests therein. *See Wickstrom, supra*, 113 B.R. at 347.[2]

We acknowledge the Debtor's contention that the proceeds of certain of his accounts are held in trust and hence are not property of his estate. Despite this revisionist characterization by a Debtor who failed to list this property at all, even as property held for a third party, we believe that such property is likely to be deemed property of his estate. *See In re Sacred Heart Hospital of Norristown*, 175 B.R. 543, 549–50 (Bankr.E.D.Pa. 1994). We are not prepared to make a final determination on this issue except to state that, as of the present, the Debtor has not established that any such property is in fact held in trust and is, for that reason, not reachable by the Trustee. *See id.* at 550–60; and *In re Kulzer Roofing, Inc.*, 139 B.R. 132, 137–44 (Bankr.E.D.Pa.), *aff'd*, 150 B.R. 134 (E.D.Pa.1992) (proof of an express or constructive trust cognizable in bankruptcy is a

---

2. The Debtor may attempt to further amend his Schedules at this juncture. However, such an amendment may not be permitted where the Debtor's bad faith has been established or unfair prejudice will result to creditors. *See In re Shaf-* fer, 92 B.R. 632, 634 (Bankr.E.D.Pa.1988), *aff'd*, C.A. No. 88–9742 (E.D. Pa. April 10, 1989). *See also Doan, supra,* and the cases cited earlier in this paragraph.

difficult proposition). At this juncture, as to the Objections, we will merely enter an order denying them as to the residences, the clothing, the pension, and the cash and checking account proceeds to the extent claimed, but granting them as to any other property owned by the Debtor on the date of filing.

## E. CONCLUSION

An order consistent with the foregoing opinion will be entered.

### ORDER

AND NOW, this 10th day of November, 1997, after the combined hearing on the Objections of LINI, INC. ("the Plaintiff") to the claims of exemption ("the Objections") filed by SYLVAN SCHACHTER ("the Debtor"), and trial of the abovecaptioned proceeding ("the Proceeding") on September 30, 1997, and upon consideration of the parties' welldone respective posttrial submissions, it is hereby ORDERED AND DECREED as follows:

1. Judgment is ENTERED IN PART in favor of the Plaintiff and against the Debtor in the Proceeding.

2. The Debtor's bankruptcy discharge is DENIED pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(5).

3. The Objections are SUSTAINED in part.

4. The Debtor is allowed to claim the following property as exempt: his residential real estate in New Hope, Pennsylvania, and in Big Pine Key, Florida; his clothing; his pension; and cash and bank deposits to the extent of $15.50 and $1,236.00, respectively. All other property exemptions are DENIED.